*Cochran vs. Moss.*

COCHRAN vs. MOSS.

Where issues are made by order of a chancellor under our statute, the finding of the jury on such issue is conclusive on the chancellor, on the hearing of the bill, unless such finding be set aside by the Court.

APPEAL from Shelby Circuit Court.

ANDERSON & DRYDEN, *for Appellant, insist:*

That the evidence establishes unequivocally the fact that he was prevented from appealing to the Circuit Court by the act and agreement of defendant. The verdict of the jury shows that the judgment against him on said note is iniquitous and unjust. That defendant ought not upon principles of justice and equity, to prevent the attainment of justice on the part of complainant by a flagrant violation of his own agreement, and coerce from him a pretended debt concocted and established by a series of fraudulent and infamous acts.

STRINGFELLOW, GLOVER & CAMPBELL, *for Appellee, insist:*

That the decree of the Circuit Court should be affirmed.

*First.* Because the issue upon the execution of the note having been directed by an interlocutory order in the cause, the finding thereon was not conclusive at all upon the parties, and it was competent for the Court to proceed to hear and adjudge the whole cause upon the bill and answer again, as was done in this instance. See 2nd Smith, Chy. Prac. p. (*note a*) citing 4 Myl. and Cr. See Equity Draftsman, 487.

*Second.* The record shows that the cause was set for hearing on the bill and answer, and was heard on the bill and answer, and though a replication appears to have been filed, yet, as no exception was taken, it must be presumed that it was withdrawn, and all the averments in the answer must be taken as true. See Rev. Code, 1835, page 310, sec. 18, 19.

*Third.* But conceding that the verdict was not to be controverted, and was to be regarded as conclusive as far as it went, the balance of the cause being reserved for further directions, as to the other matters of equity contained in the bill, the Circuit Court was compelled in adjudication of those matters, to dismiss the bill, the proofs not being sufficient to sustain them. 2 Smith's Chy. Pr. 81; 1 Bibb, 175; 2 Littell, 271; 2 Bibb, 326.

*Fourth.* Conceding the verdict at law was not to be controverted, the defendant certainly had the right to show that the issue or finding was immaterial to the relief prayed by the bill, as was the fact here, the jury having found that the promissory note in issue before them, was not "a deed," such a verdict was a positive nullity in the cause. 2 Tidd's Prac. 953.

*Fifth.* It seems that no affidavit was filed before the justice by Cochran, putting in issue the execution of the note. Had he, therefore, taken his appeal, he could not have made this point in the Circuit Court. Rev. Code 1845, p. 371, § 16.

McBride, J., *delivered the opinion of the Court.*

Samuel Cochran exhibited his bill in chancery to the Shelby Circuit Court against John Moss, and obtained an injunction to stay the collection of a judgment obtained before a justice of the peace by Moss against him. The bill sets out the judgment, denies indebtedness, and alledges that before the expiration of the time for taking an appeal from said judgment, Moss agreed to arbitrate the matters in controversy between them, but that after the lapse of the time for taking said appeal, he refused to arbitrate, and was about proceeding to enforce the collection of the judgment by execution.

The answer denies all the material averments in the bill, and prays that the injunction may be dissolved and the bill dismissed. To the answer a general replication was filed.

Under the provisions of the 6th sec. 3rd art. of the act to regulate the practice in Courts of Chancery, R. C. 844, the Court directed an issue to be made and tried by a jury; whereupon the complainant filed his plea of *non est factum* with affidavit, and issue being taken thereon, and the evidence of the parties submitted to a jury, the jury found for the complainant, the issue aforesaid. The defendant filed his motion for a new trial, assigning the usual reasons, which was by the Court overruled.

The cause was set down for hearing on the bill, answer, exhibits and evidence, when the Court decreed a dissolution of the injunction and a dismissal of the bill. The complainant moved for a new trial, &c., which being overruled by the Court, he excepted and appealed to this Court.

The first question presented for our decision, is whether the chancellor, after the finding of an issue by the verdict of a jury, can disregard that finding and decree against it.

Under the English chancery practice he unquestionably has that right, and it is of every days occurrence to do so. There the chancery and common law Courts are entirely separate and distinct tribunals, and when the chancellor desires an issue to be tried at law, he sends the parties into the Court of common law, where issues are framed and tried and the result certified to him. But such is not the case in this State; for here the same judge presides over both Courts, and the making of issues for trial by a jury is now regulated exclusively by statutory enactment. If we be right in supposing that the trial of issues at law in a chancery cause is controlled by the statute, then we must look to the provisions of the statute, and not to the practice in the English Courts, to ascertain

what are the powers rightfully to be exercised by our Courts of Chancery on the subject under consideration.

The sixth section of the act before referred to, declares that "if at any time during the progress of a cause it shall, in the opinion of the Court, become necessary to determine any fact in controversy by the verdict of a jury, the Court may direct an issue, or issues, to be made." The next section provides, "that no issue shall be made except such as shall be directed by the Court." Section 8 declares, that "the trial of such issues shall be by jury, and the issues shall be disposed of by a general or special verdict before a final decree shall be made therein." § 9. "The Court may award a new trial of any issue upon good cause shown, but not more than one new trial of the same issue shall be granted to any one party."

These provisions in the statute appear to cover the whole subject of the making of issues for trial at law, their trial, and the control which the judge can legitimately exercise over them. The judge must first find it necessary to try the fact in controversy by a jury; he then directs the issue to be made, and no other can be made except such as he directs; he cannot decree until after the issues have been disposed of by the jury; he may so far control the finding of the jury as to grant one new trial, but no more. If after the foregoing proceedings are had directly under the supervision of the Court, there is no obligatory effect in them, but the chancellor may discharge the jury and proceed to decree directly in conflict with the verdict, then it would appear useless to subject the parties to the delay and costs incident to the trial of issues by a jury, and the chancellor should be left to decide the whole matter in controversy. Such, we are persuaded, is not a fair and rational construction of the statute; such was undoubtedly not the intention of the Legislature.

This question has before occupied the attention of this Court, (4 Mo. Rep. 457,) where the Court say, that under our statute regulating the trial of issues in a Court of Chancery, that Court is put upon the same footing as a Court at Law. In the same book, page 504, where the issue in a chancery cause was tried by the judge sitting as a jury, the Court say, "had the issues in this case been found by a jury, it is plain that the Circuit Court would have been bound by the terms of the act to decree on such finding; for by the 6th sec. of the 3rd art. of the act to regulate the practice in Courts of Chancery above referred to, it is provided that the Court may award a new trial of any issue upon good cause shown, but no more than one new trial of the same issue shall be granted to any

one party, and the jury having found the issues, the party against whom the finding is must not apply to the Court to dismiss the bill for defect of evidence, the jury having found that there is no defect of evidence, but he must ask for a new trial of the issues."

The plea filed on which the issue was made, was the plea of *non est factum,* and the jury by their verdict declare that the note upon which the judgment was obtained in the Justices' Court, and to restrain the collection of which the injunction was granted, was not the note of the complainant; yet the Chancellor, on a hearing of the cause, dissolved the injunction and dismissed the bill. In doing this we think he committed error, as his only means of correcting the finding of the jury, if wrong, was by granting the party a new trial. If the verdict was permitted to stand, the decree should have perpetuated the injunction, unless the allegations in the bill were wholly untrue and disproved.

We are next to enquire whether the Circuit Court committed error in dissolving the injunctions and dismissing the bill of the complainant. The bill is one filed for the purpose of obtaining an injunction to stay the collection of a judgment at law, and the averments contained therein, are therefore verified by the oath of the complainant. Those averments or statements setting forth the equitable grounds of relief, are denied by the answer of the defendant, likewise made under oath. To support the statements contained in the bill, the complainant read the deposition of B. W. Foley, who testified as follows :

" When I resided in Missouri, which was from or about the 7th day of November, 1840, until sometime in May, 1843, and my impression is that some time in the winter of 1842 or 1843, the parties to this suit had some difficulty about two notes which defendant Moss held on complainant Cochran, suit was brought by defendant against complainant on said notes before some justice in Shelby county, as I distinctly understood from both the parties. I also learned from both the parties, that Moss had recovered judgment on both of said notes, and I am strongly impressed with the belief that one or two days after said judgments were rendered, Cochran, the complainant, came to my father's and made some enquiries as to the best course for him to pursue in order to avoid the payment of said notes or judgments. Such advice as I thought proper I gave him, and he, Cochran, left for home. Shortly after he left, and on the same day Moss came in, and the subject came up in relation to said judgments. Moss then said, that if the old man was dissatisfied, meaning the complainant, he, Moss, was willing, and indeed desirous, that the matters should be arbitrated or settled by any two respectable and disinterested

*Cochran* vs. *Moss.*

men, as he did not want any thing off the old man ; and he further stated that he was willing that the books containing his accounts might be taken and examined, and the settlement made by them.   I further state, that I heard both of the parties to this suit say that they were desirous, and had agreed to arbitrate the matters of difference pertaining to the two notes before alluded to, and Cochran came once or twice, or perhaps oftener, and said that he could not get Moss to fix a time for said arbitration, and asked me, if in the event that Moss postponed setting a day within the proper time for taking an appeal, what remedy he, Cochran, would have. I told him he could enjoin him, I had no doubt, by a proceeding in chancery, when the whole facts would come out as to the execution of the notes.

"It would be well probably here to state, that with reference to what Moss said one or two days after the rendition of the judgments spoken of in the first part of this deposition, I will now state from what both the parties said about the judgment alluded to.   I understood from the parties that the judgment was obtained a day or two days before, and it was at this time, to wit, at some one or two days after the judgment, that Moss said he was willing to arbitrate it, and authorised either my father or myself to say so to Cochran, which was done either on that day or a day or two afterwards.

" Moss when speaking of the matter to me, or in my presence, always expressed the utmost willingness to arbitrate it.

" I do not now recollect that any specific day was set apart for said purpose."

James Foley testified, " On the second or third day after the trial before the justice of the peace, the defendant, Moss, came to his house, and that he, witness, proposed to Moss to arbitrate the matter in dispute which had been tried before the justice.   Moss then replied that he was willing to withdraw the suit before the justice, pay half of the costs and arbitrate it.   Cochran also came to his house whilst Moss was there, and acceded to the proposition to arbitrate, and it was agreed that each one of the parties should select an arbitrator, and if necessary the said arbitrators should select an umpire.   Cochran expressed fears that after the time for appealing to the Circuit Court expired, that Moss would refuse to arbitrate.   He expressed these fears frequently and at different times, but he was told by witness and B. W. Foley, a lawyer, that if Moss violated his agreement to arbitrate, he, Cochran, could enjoin him from collecting his judgment and have it tried in chancery.   After this time witness went to see Moss again, and he still agreed to arbitrate ; he also

saw Cochran, who was still anxious to arbitrate. Moss told witness that Cochran had been to see him with his books, and they could not settle. Witness saw Moss and Cochran several times, and when he saw Moss he would say to witness that he could not get Cochran to arbitrate, and when he saw Cochran he would tell witness that he could not get Moss to arbitrate. Cochran said to witness after the trial that he had signed one of the notes, but he did not know which, but that the note he did sign ought to have been for $17 12 1-2; he always denied owing the $44 44 note; he denied executing the note at the time of the agreement to arbitrate in the presence of Moss before the ten days for appealing had expired, and constantly afterwards denied the execution of said note."

William Moore testified, "that in some day or two after a law suit between John Moss and Samuel Cochran, that he was at the residence of James Foley and there met with said Moss, who said to James Foley and B. W. Foley, that he came there to get advice from them. James Foley said he was aware that his business was in relation to a matter in dispute between him, Moss, and said Cochran. Moss said it was. Foley then said to him that Cochran had been to see his son, B. W. Foley, about the matter, and was dissatisfied with the course Moss had pursued. James Foley then proposed to Moss to arbitrate the matter, when Moss consented and said that he was sorry there was a difficulty between them, and if he, Moss, had a judgment for more than Cochran owed to him, he was willing to refund. After this consent of Moss to arbitrate, Cochran came to Foley's, (Moss still being there) as he said, to consult B. W. Foley about the matter. The proposition of Foley to Moss was made known by Foley to Cochran, in the hearing of Moss, who at first hesitated or refused to arbitrate, but afterwards consented. He gave as a reason for refusing to arbitrate, that the time might pass in which he could take an appeal. After much talk about the matter Cochran reluctantly consented to arbitrate. The terms of arbitration were to have two and if necessary a third man, and the award of the arbitrators was to be the amount collected by Moss off of Cochran. It was agreed that each party was to produce his books and other evidences of debt, by which the arbitrators might settle the difficulty between them. No arbitrators were selected or time fixed to my knowledge. It was agreed that if, on the arbitration, any thing should be found due to Moss, it was to be collected on the judgment. He heard nothing said about vacating the judgment. Cochran replied, 'I think you will not get much.'"

This evidence establishes very clearly that within one, two or three days after the trial before the justice of the peace, where Moss obtained

his judgment against Cochran, an agreement was entered into between them to arbitrate their matters in controversy.   B. W. Foley states the agreement to have been made one or two days after the trial, James Foley fixes the agreement at two or three days after the trial, and William Moore says that it took place some day or two thereafter.   The agreement to arbitrate was then made within the time prescribed by law for taking an appeal from the judgment of the justice of the peace ; although the defendant in his answer " cannot state positively, but believes that the ten days allowed by law for taking an appeal had elapsed before complainant made his first proposal to arbitrate."

The other point made in the bill, as the foundation of equity jurisdiction, is not so fully and clearly made out by the evidence.   The testimony of the two Mr. Foley's shows that Cochran was advised that if, under the agreement to arbitrate, Moss should refuse, after the expiration of the ten days, to comply with his agreement, his resort would be to a Court of Chancery.   Moore states, that when the proposition was made by Foley to Cochran (in presence of Moss) to arbitrate, that Cochran hesitated, and assigned as a reason for his hesitancy, that he was fearful the ten days might elapse, within which he could appeal from the judgment, before an arbitration could be had ; but that finally Cochran did consent.   The answer of Moss is, that " he was willing, and so told the complainant to submit the matter to arbitration until respondent was credibly informed that complainant had asserted publicly, and in the presence of divers persons, that this respondent had forged his, complainants, name to a note, and after that respondent admits that he did utterly refuse to arbitrate the matter."   Whether this refusal was made before or after the expiration of the time allowed for an appeal, is not settled.   If made before, then perhaps Cochran would have no substantial cause of complaint ; but if he delayed until afterwards, then it was calculated to do Cochran harm, as it deprived him of a legal right to have his case tried anew in the Circuit Court by appeal.   If we are permitted to raise an inference, as to the time of this refusal, drawn from the answer of Moss, then it is clear that it occured after the time, for Moss, as before referred to, states in his answer, that the proposition to arbitrate was made after the ten days had expired.   The refusal must have been subsequent to the agreement to arbitrate.   But there are other reasons which induce the belief that the refusal was not made until after Cochran's right to appeal had been forfeited.   James Foley states several interviews had by him with the parties, and that Moss always expressed a willingness to arbitrate ; that at other times Moss told him that he could

not get Cochran to fix the day for arbitration ; then Cochran complained that he could not get Moss to agree on a day. Moss also informed him that Cochran had been over with his books and they could not settle. These frequent interviews between the parties, and between them and the witnesses, residing as they did in the country, most probably extended to a period of time beyond the ten days.

There is another consideration connected with this subject entitled to controlling influence, if any doubt existed in the testimony. The issue made up on the plea of *non est factum* had been tried and found by the jury in favor of Cochran ; the Court had refused to set aside the verdict of the jury. In this state of the case the Court should not have required as strict proof to sustain the bill as in ordinary cases. The dissolution of the injunction and the dismissal of the bill by the Court, gave to Moss the entire benefit of a judgment to which the verdict of the jury declared he was not entitled, thus rendering nugatory entirely the finding of the jury.

Wherefore for the foregoing reasons the decree of the Circuit Court is reversed ; and this Court proceeding to give such a decree as that Court ought to have given, do order, adjudge and decree, that the injunction be made perpetual, and that the complainant recover of the defendant his costs in the Justices' Court, the Circuit Court, and in this Court expended, and have thereof his writ of execution.

SCOTT, J.

There is nothing in the record of this case which shows that the verdict of the jury on the issue was disregarded by the Court below. The evidence was sufficient to show that there was an agreement to arbitrate before the time for appealing had expired. No affidavit in writing was necessary denying the execution of the bond in the Justices' Court. See Kennerly vs. Weed, 1 Mo. Rep. 480, 673. I am in favor of reversing the decree.