DAVID TAYLOR ET AL. V. WILLIAM C. GILLEAN ET AL.

Effects in the hands of a receiver appointed by the court, are not subject to the process of garnishment.

Notes and accounts cannot be levied on and sold; and, therefore, are not liable to garnishment.

An intervenor in an injunction suit, cannot successfully oppose the dissolution of the injunction, unless he have made out a case which entitles him to one; and he must have given bond, and verified his petition by affidavit.

Pending a motion against a receiver, to enforce the observance of an order dissolving an injunction, and restoring to the defendants the property in his hands, which is resisted by him, on the ground that a petition has been filed by intervenors, to subject the property to their debt, (the court having intimated its opinion upon the sufficiency of the petition of the intervenors,) it is not an improper exercise of judicial discretion, to refuse the intervenors leave to amend, and, upon motion of the defendants then filed, to dismiss their petition.

Whether equity will assist a creditor to reach the *choses in action* of his debtor, not tangible by legal process, examined, and authorities discussed, but left undecided.

If the power of a court of equity can be invoked in such a case, it is only where the petition shows that all legal remedies have been exhausted.

Where debts have been assigned, the debtors may be garnished, and the assignee made a party, to contest the validity of the assignment.

APPEAL from Anderson. Tried below before the Hon. John H. Reagan.

This suit was commenced on the 12th of March, 1856, by John Shackleford against William C. Gillean, John E. Smith, Reuben A. Reeves, and William A. Van Alstyne, as to the latter of whom it was, by consent, dismissed at the ensuing term of the court.

The plaintiff alleged in his petition, that in the spring of 1855, Gillean and Smith were partners, conducting two mercantile establishments in Anderson county; one at Palestine, in the firm name of W. C. Gillean & Co., the other at Kickapoo, in the firm name of J. E. Smith & Co.; that the said defendants were largely indebted to merchants in the city of New York, who agreed to give them time, if they would settle their indebtedness by drafts drawn

in their favor, on the petitioner, and accepted by him, payable at twelve and twenty-four months; and that the plaintiff had accepted such drafts, in consideration of the agreement of the said Gillean and Smith, to secure him against loss on account of the acceptance thereof; to do which, it was agreed, that they should transfer to him an amount of notes and accounts, then due to the said firms, sufficient fully to protect him against the said acceptances first due; and should enter the same in their books, to his credit, and hold them in trust for him; and that they should collect the same in money or cotton, and remit the money collected, and ship the cotton to him at Galveston, (where he was engaged in the commission business,) for sale, in time to realize funds to meet the said first drafts when due; and should secure the payment of the second drafts, by the notes of certain parties, executed to the plaintiff, and to be held by him as collateral security. That, in pursuance of the said agreement, he had accepted drafts for them to the amount of $10,847.37, and that Gillean and Smith had transferred to him notes and accounts set out in an exhibit to his petition, and had made the entries of the same in their books, in his favor, as agreed upon; but that they had failed and refused to remit the money and cotton collected on the same, as they had agreed; that the first of the drafts had fallen due, and had been paid by the plaintiff; and that Gillean and Smith, combining with the other defendants for the purpose of defrauding him, had assigned and transferred to the said Reeves, in trust for the purpose of paying certain fraudulent and fictitious debts, all the notes, accounts, books, and effects, and property of every character and description, belonging to the said firm of W. C. Gillean & Co.; and that among the effects so transfered, were a large amount of the notes and accounts previously transferred to the plaintiff, and held in trust for him, and also a large amount of other effects, the proceeds of the said trust fund. The plaintiff then prayed, that all the defendants might be enjoined from, in any manner, disposing or making use of any of said property belonging to said firms; that

a receiver might be appointed by the court, to whom the defendants should deliver all of the said property, notes, accounts, books, &c., who should collect the same, and apply the notes and accounts transferred to him, and effects into which any of them had been changed, (as to which a discovery was prayed,) to the payment of what was due to the said plaintiff on account of the drafts paid by him, and the others, when due.

The injunction was granted, and a receiver appointed as prayed for, to whom the defendant Reeves delivered all of the property and effects transferred to him by Gillean and Smith.

At the next term of the District Court, which commenced its session two days after the filing of the said petition, the defendants appeared, and moved the court to dissolve the injunction, and restore the property placed, by its order, in the hands of the receiver. This motion was sustained as to all the property (except such of the notes and accounts as had been transferred to the plaintiff,) that might be in the hands of the receiver; and with this exception, the receiver was ordered to restore the effects delivered to him.

In the meantime, however, and during the same term of the court, the appellants, David Taylor, Henderson & Gaines, and Gregory & Co., had each recovered judgments for large amounts, against the said firms of W. C. Gillean & Co., and J. E. Smith & Co., and caused writs of garnishment to be issued upon each of their judgments to A. E. M'Clure. And the appellants, as judgment creditors, filed in this cause, their petition as interveners, in which they charged that Gillean and Smith were insolvent; that they were creditors before the execution of the assignment to Reeves; that the same was fraudulent, and made to delay and hinder them in the collection of their debts; and that the pretended debts, to secure the payment of which the assignment purported to be made, were without consideration. It was further alleged, that the said interveners had had writs of garnishment served upon the receiver, who, it was prayed, might be permitted, by order of the court, to answer what effects belonging to the said Gillean and Smith, were in his hands; and

that he should retain and collect the same, and apply them (except so much thereof as the plaintiff, Shackleford, should be entitled to,) in payment of their debts.

This petition was not, however, sworn to, nor was an injunction asked, or a bond tendered.

On a subsequent day of the same term of the court, the plaintiff, Shackleford, (in which he was joined by the intervenor, Taylor, for himself, and on behalf of the other intervenors,) filed an application, asking the court to review its order, partially dissolving the injunction; and that the same should be set aside, and the receiver directed to retain all of the said effects in his hands for collection, subject to the future order of the court. This application was refused, and the case continued until the next term; not having been filed in time to stand for trial at that term, and the defendants not having answered.

At the next term of the court, the defendants filed their answers to the merits, and also a motion setting forth, that the receiver had not complied with the order of the court, by restoring the effects delivered to him, &c., and asking that he should be compelled by the court, to comply with the order.

The receiver answered, that he had not restored the effects, &c., as directed in the said order, because the intervenors had caused writs of garnishment to be served upon him, and had filed their petition as intervenors, in this case; and praying that he might by permitted to answer the said writs, which he asked might be taken as a part of his answer to the motion.

To this answer the defendants filed exceptions, upon the argument of which, the court intimated an opinion, that the petition of the intervenors was insufficient to entitle them to the relief sought; that it should have been sworn to, and an injunction bond tendered: whereupon, the intervenors asked for a sufficient time to amend their petition, so as to comply with the views intimated by the court; and that the ruling of the court on the motion might be suspended for that purpose. This was refused, and the receiver was, by order of the court, directed within two

days, to comply with the order made at the former term, and re-
store the effects in his hands : and exceptions then filed by
the defendants, to the petition of the intervenors, were sustain-
ed, and their petition dismissed.   To which several rulings of
the court the intervenors excepted.

*John E. Cravens,* for the appellants.—The object of this suit
was, to subject so much of the property of the debtors, in the
hands of the receiver, as was not subject to the claim of Shackle-
ford, to the payment of the debts due the intervenors.   If the
facts stated in the petition be true, and they must be so taken
upon the exceptions, the conveyance to Reeves was fraudulent.
It is alleged, that the parties for whose benefit this deed was
made, were not *bonâ fide* creditors, but that the evidences of in-
debtedness described in the deed, were executed by the payers,
without any consideration therefor.   Hence, this deed could be
no obstacle to the claim of the intervenors, out of the remainder
not subject to Shackleford's debt.   Had the decree of the court
dissolving the injunction, been made before the filing of the pe-
tition, or had they failed to bring it to the notice of the court,
before the cause was finally disposed of for the term, then there
would have been no propriety in the suit against the receiver,
in connexion with the suit first brought by Shackleford.   The
suit could not be maintained against Reeves alone, for he had
not the possession of the property.   It could not be brought
against the person who was acting as the receiver, "for where a
receiver is in possession, under the process or authority of the
court, in execution of a decree or decretal order, his possession
is not to be disturbed, without leave of the court, for his posses-
sion is deemed the possession of the court, and the court will not
permit itself to be made a suitor in the courts of law." (2 Story,
Eq. Jur. §§ 833, 891; Parker v. Browning, 8 Paige, Rep. 388;
Mackay v. Blackett, 9 Id. 437 ; Albany City Bank v. Scher-
merhorn, 9 Id. 372.)

Upon the second proposition, it is submitted, that the proper
and usual mode, where a third party claims an interest in a fund

or property, that is in the hands of a receiver, is for him to come in and have the extent of his interest ascertained; (*supra*.) This was formerly done by causing an examination before the master, or by the court that appointed the receiver, upon the application of the party to direct a trial at law. In the latter case, the court always takes care to give proper instructions, for the protection of the receiver, (*supra*.) But it is the object of our courts to avoid a circuity of action, and unnecessary delay, and hence they proceed at once to ascertain the rights of all the parties claiming an interest. At least, this seems to us to be the only course consistent with reason and justice, under our system.

Chief Justice HEMPHILL, says, in the case of Eccles v. Hill, 13 Texas Rep. 65: "The rules in reference to the plea of intervention, are (at least some of them,) well established. There is no doubt, that under our system, which abhors a multiplicity, a third party may intervene in a suit between others, for the protection of his own rights."

Was the fund in the hands of the receiver, the subject-matter of a suit then pending? It was, and not only so, but it was in court where, as we have shown, the intervenors could not attempt to assert their right to it, without leave of the court. They could not even have garnished the person indebted to Gillean and Smith, according to the view we have taken of the authorities, and thus defeat the disposition of this fund by the court, that had it in possession. It will be seen, however, from the bill of exceptions, that the decision was not founded upon the supposed want of authority to intervene; and we will pass from the question, simply referring to some of the decisions made by this court, upon the subject of the plea of intervention, believing that they will throw some additional light on the subject. (Chandler v. Fulton, 10 Texas Rep. 2; Field v. Gantier, 8 Id. 74; Wright v. Neathery, 14 Id. 211; Bass v. Fontleroy, 11 Id. 698.) The last of them, is deemed to have carried the doctrine of the right to intervene, beyond what is necessary to support the case at bar.

The third assignment complains of the ruling of the court, in refusing leave to amend, so as to conform to the opinion that was intimated by the presiding judge. "The pleading in all suits may be amended, under the direction of the court, and upon such terms as may be prescribed, at any time before the partis announce themselves ready for trial, and not thereafter," &c. (Dig., Art. 693.) This court has said, (Connell v. Chandler, 11 Texas Rep. 253,) "It is the right of a party to amend, subject only to the qualification, that the amendment be proper, and in proper time." The right to amend in a proper case, is a right not subject to the discretion of the court. (Teas v. McDonald, 13 Id. 349.) Were the amendments proposed to be made proper in themselves ? The object was to comply with an opinion intimated by the presiding judge, before exception was taken to the petition.

*William B. Ochiltree,* for the appellees.

*M. Priest,* also for the appellees.

WHEELER, C. J.—The appellants sought, by their intervention in the suit, to obtain the answer of the receiver, as garnishee, and to set aside the deed of assignment, and subject the notes and accounts in the hands of the receiver, to the satisfaction of their judgment.

To the first of these objects, they manifestly were not entitled. The effects in the hands of the receiver were under the immediate control, and held subject to the judgment of the court, and could not be interfered with by this process. Besides, it has been expressly decided, that a person having possession of *choses in action* of a debtor, cannot be charged by judgment, as garnishee. (Price v. Brady, 21 Texas Rep. 614.) A discovery was not sought by this proceeding.

The appellants were not in a situation to oppose, successfully, the dissolution of the injunction. To do this, they must have made out a case which would entitle them to the award of an

injunction.   This they had not done.   Their petition, if other-
wise sufficient, was not verified by affidavit; nor had they given
bond.   To cure these defects, they asked that time be given
them to amend; which, however, the court refused.   The court,
it seems, had intimated its judgment upon the sufficiency of the
petition, before the leave to amend was asked; and, as the case
is presented by the record, we cannot say, that, in its then atti-
tude, the refusal to delay the case to give time to amend, was
not a proper exercise of judicial discretion.

The appellants cannot complain of the order dissolving the
injunction.   Were they entitled to have their petition continued
over, as against the trustee, to enable them to impeach the as-
signment for fraud, and have the effects in the hands of the trus-
tee, applied in satisfaction of their judgment?   The notes and
accounts were not subject to be levied on and sold, under process
of execution.   (Price v. Brady, *supra*.)   And if the petition
of the plaintiffs can be maintained, it must be upon the ground
that equity will assist a judgment-creditor to reach *choses in
action*, not tangible by execution, in aid and satisfaction of his
judgment.   Whether equity will interfere, and grant such a re-
medy, is a question upon which there appears to have been much
contrariety of opinion.   The question was considered, and many
of the authorities examined by Chief Justice HEMPHILL, in Price
v. Brady; but it was left open for future decision.   In Bayard
v. Hoffman, 4 Johns. Ch. Rep. 450, Chancellor KENT, upon a
review of the English decisions, and an elaborate examination of
the question, arrived at the conclusion, that in cases of fraudulent
alienations of such property, courts of equity ought to interfere
and grant remedial justice; for otherwise, a debtor, under shel-
ter of such a conveyance, might convert all his property into
stock, and settle it on his family, in defiance of his creditors,
and to the utter subversion of justice.   Judge STORY has ex-
pressed the opinion, that the cases cited by Chancellor KENT, go
far to establish the doctrine for which he contends; but he sug-
gests, that a distinction may exist between cases where a party
actually indebted, converts his existing *tangible property* into

stock, to defraud creditors, and cases where he becomes possessed of stock, without indebtment at the time; or if indebted, without having obtained it by the conversion of any other tangible property. Where tangible property is converted into stock, to defraud existing creditors, he thinks there may be a solid ground to follow the fund, however altered. (1 Story, Eq. 368, n; see this subject examined in Donovan v. Finn, 1 Hopkins, (N. Y.) Ch. Rep. 59.) It is unquestionable, that some of the English cases, especially in the time of Lord HARDWICKE, and some other American cases go the full extent of the doctrine held by Chancellor KENT, in Bayard v. Hoffman, *supra;* (Tappan v. Evans, 11 N. Hamp. 311; Storm v. Waddell, 2 Sandf. Ch. Rep. 494; 9 Paige, Rep. 182; Mercer v. Beale, 4 Leigh, 207;) and in several of the states, a remedy is given by statute, to reach *choses in action* of every description, either by an execution at law, or by the assistance of a court of equity. (2 Kent, Com. 443, n, 8th edit.) There seem to be strong reasons, as well as much authority, for the doctrine, that equity will lend its assistance to the judgment creditor, to reach and subject *choses in action*, of which the debtor has made a fraudulent assignment, while the creditor was in pursuit of his demand; otherwise, as has been said, there would be great temptations to fraudulent alienations; and a debtor might thus place all his property beyond the reach of his creditors, to the utter subversion of justice.

It must, however, be admitted, that the question is left in uncertainty, by the conflict of judicial opinions; and it is not necessary that it be decided in the present case. For if it be admitted, that the powers of a court of equity may be invoked, to afford a remedy in such a case, it cannot be until after all legal remedies have been exhausted. That must be shown, as a ground for invoking equitable jurisdiction. It does not appear in this case, that the legal remedy had been exhausted. It is not averred, that the judgment debtors have no property, which is subject to seizure and sale by the ordinary process of execution. It is alleged, that they are insolvent; but this may be

true, and yet they may have tangible property, real and personal, subject to execution. The law, moreover, furnishes the appellants a remedy, by process of garnishment to the persons indebted to the defendants. By resorting to this legal remedy, as to the *choses in action*, which are subject to be thus reached, and making the assignee of the defendants a party to the proceeding, they might have impeached the validity of the assignment, and have reached the effects in the hands of the assignee, without calling to their aid, the equitable powers of the court. (Inglehart v. Moore, 21 Texas Rep. 501.) As the appellants were not entitled, to invoke the equitable powers of the court to afford a remedy in aid of their judgment, until they had exhausted their legal remedies (and it does not appear by the averments of their petition, that their legal remedies had been exhausted,) the court did not err in dismissing the petition, and the judgment is affirmed.

Judgment affirmed.