## Case No. 3,478.

### In re CUNNINGHAM.

[9 Cent. Law J. 208;[1] 19 N. B. R. 276; 20 Alb. Law J. 257.]

District Court, D. Iowa. Aug. Term, 1879.

GARNISHMENT—CUSTODIA LEGIS.

The rule that money in custodia legis is not subject to process is applicable to the case of funds in the hands of an assignee in bankruptcy, which another is attempting to secure by garnishment.

·[Cited in Re Chisholm, 4 Fed. 527.]

Gilmore & Anderson and Joseph G. Anderson, for Alexander.

James & Frank Hagerman, for intervener.

LOVE, District Judge. The case before the court is this: On the ——— day of ———, 1876, Cunningham & Mason were by this court adjudged bankrupts, and Harry Fulton chosen assignee. This court, in bankruptcy, of the 22d day of September, 1877, declared a dividend of said estate, and ordered the assignee to pay the same to the creditors. Among the creditors were Matthews & Co., to whom the court adjudged a dividend of $488.38. Subsequent to the order declaring the dividend, and directing the assignee to pay the same, but before the assignee made the payment,—that is to say, on the 29th day of September, 1877.—Miller Alexander, to whom Matthews & Co. were indebted by note, commenced a suit in the circuit court of Lee county, Iowa, and garnisheed Harry Fulton, the assignee, seeking to obtain satisfaction out of the dividend in his hands which had been adjudged to Matthews & Co. Miller Alexander transferred his right of action to

---

[1] [Reprinted from 9 Cent. Law J. 208, by permission.]

Fontaine Alexander, who was duly substituted as plaintiff in the state court, and who, in due course, obtained judgment against Matthews & Co. in the state circuit court for the full amount of his claim, and against Harry Fulton, as garnishee, for said sum of $488.38. The judgment against the garnishee, Fulton, was somewhat peculiar. It provided that no execution should issue until the district court of the United States for the district of Iowa should order said Harry Fulton, assignee, to pay said sum to plaintiff. On the 16th day of January, 1878, Miller Alexander presented his petition to this court, praying that Harry Fulton be ordered to pay the sum due from him to said Matthews & Co. to the sheriff of Lee county, to abide the judgment of the state court. It further appears that, on the 28th day of April, 1879, said Matthews & Co., for a valuable consideration, transferred and assigned, to one Elbert G. Roberts, who intervenes in the case, the said dividend, amounting to said sum of $488.38, authorizing him to collect the same, etc. Harry Fulton also intervenes, answering petitions of plaintiff and said Roberts, asking to be protected.

It is well settled that money or property in custodia legis cannot be reached by garnishment on execution in the absence of statutory authority. This doctrine has been applied in numerous cases; to various classes of legal custodians, such as receivers, sheriffs, clerks of court, executors and administrators, treasurers, assignees in bankruptcy, etc. Patterson v. Pratt, 19 Iowa, 358; Drake, Attachm. (5th Ed.) c. 22, §§ 493–516. Property in the hands of a receiver is in custodia legis, and is exempt from execution or attachment: Martin v. Davis, 21 Iowa, 537; Wiswall v. Sampson, 14 How. [55 U. S.] 52; Columbian Book Co. v. De Golyer, 115 Mass. 69; Glenn v. Gill, 2 Md. 1; Taylor v. Gillean, 23 Tex. 508; Fields v. Jones, 11 Ga. 413; Nelson v. Conner, 6 Rob. (La.) 339; Langdon v. Lockett, 6 Ala. 727; Farmers' Bank v. Beaston, 7 Gill & J. 421; Gouverneur v. Warner, 2 Sandf. 624; Yuba Co. v. Adams, 7 Cal. 35; Bentley v. Shrieve, 4 Md. Ch. 412; Freem. Ex'ns, 129; Drake, Attachm. 509; Robinson v. Atlantic & G. W. Ry. Co., 66 Pa. St. 160. Same rule applies to garnishment: Glenn v. Gill, 2 Md. 1; Taylor v. Gillean, 23 Tex. 508; Columbian Book Co. v. De Golyer, 115 Mass. 69; High, Rec. 151. Applied to trustee appointed by the court: Bentley v. Shrieve, 4 Md. Ch. 412. See Jones v. Gorham, 2 Mass. 375; De Coster v. Livermore, 4 Mass. 101, in which assignees, under the bankrupt law of 1800 [2 Stat. 19], were charged. But the question was not raised nor considered, and the cases were afterwards overruled in Colby v. Coates, 6 Cush. 558. The rule was applied to sheriffs: Wilder v. Bailey, 3 Mass. 289. To county treasurers: Chealy v. Brewer, 7 Mass. 259. To executors and administrators: Brooks v. Cook, 8 Mass. 246. Colby v. Coates, 6 Cush. 558, de-

cided that an assignee, under the insolvent law of Massachusetts, cannot be reached by trustee process; approved and followed in Columbian Book Co. v. De Golyer, 115 Mass. 69; Dewing v. Wentworth, 11 Cush. 499. Assignees in bankruptcy cannot be charged as garnishees in state courts: In re Bridgman [Case No. 1,867]; Jackson v. Miller, 9 N. B. R. 143. The remedy to reach this fund is to have a receiver appointed to represent this fund in bankrupt court: Jackson v. Miller [supra]. Or by creditors' bill before judgment: Pendleton v. Perkins, 49 Mo. 565; Thompson v. Scott [Case No. 13,975]. The state court has no authority to bring an assignee before it who is acting under the orders of the United States court: Akins v. Stradley (Iowa) 1 N. W. 609. The reason of this doctrine seems to be that the court, having the money or property in its custody under the law, holds it for some purpose, of which that court is exclusive judge. To permit property or money thus held to be seized on execution, attached or garnisheed, would, therefore, defeat the very purpose for which it is held, and, in many cases, enable some other court to dispose of property or money, and wholly divest it from the end or purpose for which possession has been taken. A conflict of jurisdiction and decision would, in many cases, thus ensue. Thus, the court in possession of the property or money might order it to be distributed or paid in a certain way, while the court issuing the process of garnishment might order and adjudge a wholly different designation of the property or money. To attempt a seizure of property by attachment in some other court would necessarily bring the two tribunals into collision, and would, if successful, wholly withdraw the property from the power of the court in possession, and divert it from the purpose for which possession has been taken.

The true doctrine is that, when property or money is in custodia legis, the officer holding it is the mere hand of the court; his possession is the possession of the court; to interfere with his possession is to invade the jurisdiction of the court itself; and an officer so situated is bound by the orders and judgments of the court whose mere agent he is, and he can make no disposition of it without the consent of his own court, express or implied. How can such an officer, when garnisheed, know what answer he can make with safety to himself, in advance of the orders and judgments of the court having possession of the property and jurisdiction of his person? How could such an officer safely expose himself by his answer as garnishee to the danger of a personal judgment in some other court, before the determinations of the court having control of him and the property? Suppose the court, whose hand and agent he is, should order and direct him, in a given case, to make one disposition of the property or money, and the court issuing the process of garnishment should

enter judgment against him, requiring a wholly different disposition of it, which judgment should he obey? He would be like a soldier between two fires, and he would inevitably fall under one or the other. But by far the deadlier fire of the two would be that of his own court, since he would not only, by a disobedience of its orders, expose himself to a suit upon his official bond, but to punishment for contempt. In this view of the subject, it has been held in some cases that, when the court having charge of the property, money or funds makes final orders for its distribution, the officer whose duty it is simply to turn over to each individual distributee the amount awarded to him by the final judgment of the court, may be garnisheed by a creditor of a party to whom the dividend or distributive share has been adjudged. Thus, in New Hampshire, Delaware and Missouri, while the principle announced in Massachusetts was recognized as sound, it was considered to be inapplicable when an administrator had been, by the proper tribunal, adjudged and ordered to pay a certain sum to a creditor of the estate, and in such case the administrator was charged as trustee of the party to whom the money was ordered to be paid. Adams v. Barrett, 2 N. H. 374; Fitchett v. Dolbee, 3 Har. (Del.) 267; Curling v. Hyde, 10 Mo. 374; Richards v. Griggs, 16 Mo. 416. The reason of this exception was given by the superior court of New Hampshire, and adopted by the supreme court of Missouri, in the following language: "An administrator, till he is personally liable to an action in consequence of his private promise,—the settlement of the estate, or some decree against him, or other cause,—cannot be liable to a trustee process; because, till some such event, the principal has no ground of action against him in his private capacity, and he is bound to account otherwise for the funds in his hands. The suit against him, till such an event, is against him in his representative capacity, and the execution must issue to be levied de bonis testatoris and not de bonis propriis. But in the present case, the trustee was liable in his private capacity to the defendant for the dividend. The debt has been liquidated, and the decree of payment passed. The debt was also due immediately. Execution for it ran against his own goods, and the trustee process would introduce neither delay nor embarrassment in the final settlement of the estate." The doctrine of this case is that where the court having custody of the money, fund or property, and jurisdiction of the subject-matter, makes a final determination of the matter, and awards judgment as to the amount to be paid to each individual distributee, the officer thus required to make payment may be made personally liable for his failure to make the payment, and therefore a garnishment against him, resulting in a personal judgment, is no invasion of the jurisdiction of the court having the property in custody, and no encroachment upon the possession of that court. On the contrary, the garnishment recognizes the action of the court ordering the payment or distribution, and founds itself upon the judgment of that court. When the judgment in the garnishment proceedings must needs be against the garnishee in his representative capacity, the proceedings must fail, because it could be levied neither upon the garnishee's private property nor upon the property he represents; not upon the former, because the judgment is not personal, nor upon the latter, because the property which he represents is in the possession and under the control of another court, whose possession and jurisdiction cannot be invaded.

It might be supposed, upon a hasty glance, that the principle laid down in the new Hampshire, Delaware and Missouri cases is applicable to the case now before the court. Here the court of bankruptcy has declared a dividend, and determined specifically what each creditor is entitled to. It has ordered the assignee to pay a specific sum to the judgment debtor in the state court from which the process of garnishment issued. If the assignee failed to pay that sum, he would be liable to a personal action; why, therefore, may he not be garnisheed? Why may not a personal judgment be rendered against him, as garnishee, for the amount of the dividend, since a personal action could be maintained by the judgment creditor against him for the same cause? There is, in my judgment, an insuperable difficulty in recognizing this view in the present case, growing out of the peculiar jurisdiction in bankruptcy. It cannot for a moment be doubted that the court of bankruptcy has exclusive jurisdiction of the bankrupt's estate, and of its administration from the time of the adjudication to the final discharge of the estate, and the discharge of the assignee. This jurisdiction does not, by any means, cease with the order of distribution. It is clearly within the power of the court, and its duty, to see that its assignee pays over to the distributees the dividends awarded to them. The assignee failing to perform this duty, the court will punish him for contempt; order a suit upon his official bond, and refuse to give him a final discharge. This jurisdiction is exclusive. No other court can touch, or bind the assets of the bankrupt, or authorize any suit against the assignee, who is the officer of the court. It follows that any action in any other tribunal, aiming to control the action of the assignee, or directly or indirectly compel the assignee to dispose of the assets or pay over money in his hands belonging to the estate, must be utterly without jurisdiction, and therefore null and void. What is the effect of a garnishment of the assignee? It either compels him to suspend payment to the distributee in bankruptcy, in pursuance of the order and judgment of the bankrupt court, or it is without any legal

efficacy whatever. The nature of every gar-
nishment is that the garnishee must, upon
receiving the notice, keep the property,
money or debts in statu quo, to await the
final judgment of the court issuing the pro-
cess. The notice of garnishment to the as-
signee in this case had that effect, or it was
wholly nugatory. But how could the state
court, without any jurisdiction whatever, is-
sue any process to arrest the action of the
assignee in the payment of the dividends or-
dered by the court of bankruptcy. How
could a court manifestly without jurisdiction,
thus, by its process and judgment, effect the
administration of, and final distribution of,
the bankrupt's estate? To sum up the argu-
ment, the court of bankruptcy, having ex-
clusive jurisdiction, orders its assignee to dis-
tribute the estate to the creditors, in dividend
declared by the court; but a state court, with-
out any jurisdiction whatever, sends its pro-
cess to the assignee, commanding him, in
substance, not to pay over the dividends, but
to await the final judgment of the state
court. Which of these commands shall the
assignee obey? And if this could be done,
it might result in postponing, almost indefi-
nitely, the final settlement of bankrupts' es-
tates; for there might be numberless suits
against the creditors in bankruptcy, and, of
course, there could be no final settlement
and distribution until the final action and
judgment in the state courts in the principal
actions. Hence the proceedings in bankrupt-
cy would have to be stayed, to await the
slow and tedious course of justice, which
might prove to be long protracted litigation
in the state courts.

It was argued that this court, seeing the
justice of the petitioner's claim as a creditor,
would, by a sort of comity, recognize the
judgment of the state court, and order the
assignee to pay the dividend upon it. Comity
is a vague and undefined principle in our
jurisprudence. I do not know of any law or
usage which would justify the court in mak-
ing such an order. If the question were be-
tween the original parties, there would be
less difficulty; but other rights have inter-
vened. The dividend has been assigned, and
the assignee is before the court claiming un-
der his assignment. Seeing that the garnish-
ment was without jurisdiction, and therefore
absolutely null, there was no lien, and noth-
ing pending in the nature of a judicial pro-
ceeding of which the assignee of the dividend
was bound to take notice. I cannot, there-
fore, see but that he had a perfect right to
purchase the dividend, and take a transfer
of it. And if he did, and paid his money for
it, his equity is at least equal to that of the
attaching creditor. There is, therefore, no
overruling consideration of equity to induce
the court to resort to some extraordinary
remedy unknown to the law, to aid the at-
taching creditor as against the assignee of the
dividend. The fund should be paid to Rob-
erts, the intervener.