SEGUROS TEPEYAC, S. A., COMPANIA MEXICANA de SEGUROS GENERALES, Appellant,

v.

Maynard BOSTROM and James L. Jernigan, Appellees.

No. 21167.

United States Court of Appeals
Fifth Circuit.

June 16, 1965.

William M. Brown, Brown, Herman, Scott & Young, Fort Worth, Tex., for appellant, Cantey, Hanger, Gooch, Cravens & Scarborough, Fort Worth, Tex., of counsel.

John Alan Appleman, Urbana, Ill., Albert H. Manus, Jr., Freeport, Ill., Joe Spurlock, Fort Worth, Tex., Stanley S. Crooks, Dallas, Tex., Jean Appleman, Urbana, Ill., for appellees.

Jerome Sneed, Jr., Austin, Tex., for American Mut. Ins. Alliance, amicus curiae.

Keith F. Kelly, Kelly, Morris, Walker & Maynard, Fort Worth, Tex., for the National Association of Independent Insurers, amicus curiae.

Julietta Jarvis, Chilton Bryan, Houston, Tex., for Aseguradora Reforma, S. A., Cia. General De Seguros, and others, amici curiae, Bryan & Patton, Houston, Tex., of counsel.

Before BROWN and WISDOM, Circuit Judges, and ESTES, District Judge.

WISDOM, Circuit Judge:

This case presents a new twist in the Texas Stowers doctrine. When an injured person claims damages against an insured tort-feasor for an injury covered under a liability policy, the Texas Stowers doctrine requires the insurer to exercise ordinary care to protect the insured to the amount of the policy limits.[1] If the insurer breaches that duty,

---

1. G. A. Stowers Furniture Co. v. American Indemnity Co., Tex.Comm.App.1929, 15 S.W.2d 544; Chancey v. New Amsterdam Casualty Co., Tex.Civ.App.1960, 336 S.W.2d 763, error ref. n. r. e.; 32 Tex. Jur.2d § 445, § 498. See Fidelity & Casualty Co. of New York v. Robb, 5 Cir. 1959, 267 F.2d 473. See Robert E. Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954); Kronzer, The Present Status of the Stowers Doctrine in Texas, 1 So. Tex.L.J. 167 (1954); Dye, Insurer's Lia-

the insured has a cause of action against the insurer for the total amount of the claimant's judgment against him, including the amount in excess of the policy limit. Here, the policy was for $5,000; allegedly, the claim might have been settled for that amount; instead, the injured claimant recovered a judgment against the insured for $270,000. The insured is insolvent, has paid nothing on the judgment, and did not sue the insurer. The question this case presents is whether the injured claimant has standing to sue the liability insurer for the amount of the judgment in excess of the policy limit. The district court allowed the claimant to sue the insurer for the full $270,000 and, after a jury finding that the insurer was negligent, granted judgment in favor of the plaintiff for $270,000. 225 F.Supp. 222. We reverse the judgment as to the excess over the policy limit.

## I.

In November 1958 three young men, Bostrom (plaintiff - appellee), Sullivan, and Jernigan (intervenor) went on a pleasure trip to Mexico in Jernigan's car. After they crossed into Mexico, Jernigan took out public liability insurance with Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales (defendant-appellant), a Mexican corporation licensed to do business in Texas. The policy was a three-day "Special Automobile Policy for Tourists" covering risks within the Republic of Mexico only. The maximum coverage was five thousand dollars for each person injured, with ten thousand dollars the total coverage for one accident. The second day of their Mexican holiday, Jernigan's car collided with a bus. Sullivan was driving with Jernigan's permission, and Bostrom was asleep in the back seat. Bostrom "sustained about as serious injuries as a person could endure and live"; he is now a permanent quadriplegic. 225 F.Supp. at 227.

The insured notified the insurer of the accident on the day it occurred. The insurer made an investigation and, within eight days, settled with the bus company for damages to the bus and with Jernigan for damages to his automobile. At that time the company had no knowledge that Bostrom intended to assert a claim against Jernigan, and no reason to negotiate with Bostrom if, as the company contends, the policy does not cover the claim of a guest-passenger. Seguros Tepeyac states that no one was ever aware that Bostrom had asserted a claim until June of 1960, nineteen months after the accident, when Bostrom's attorney informed Jernigan that Bostrom was about to file suit against Jernigan. August 26, 1959, Bostrom's father wrote the Company for a photo-copy of the "insurance file" relating to Jernigan. He wrote again September 20 and December 1 asking for a copy of the insurance policy. The Company replied to these letters, wanting to know his interest in the matter, and sent copies of documents from its file but did not send a copy of the policy until Bostrom's attorney wrote June 30, 1960, asking for a copy.

The copy of the policy forwarded to Bostrom's attorney is the one-page policy sued on in this case. The district court found that there was no evidence to substantiate the insurer's contention that the policy delivered to Jernigan had an additional page excluding liability for injuries to third persons riding as guest passengers.

Shortly before filing suit on July 12, 1960, Bostrom made an oral offer to Sullivan and Jernigan to settle his claim against them for $5,000. They rejected it for lack of funds. Both the insured and the claimant refrained from mentioning the offer of settlement to the insurer, and the Company asserts that it had no knowledge of the existence of the offer until after Bostrom recovered judgment for 54 times the amount of the offered settlement.

bility for Judgments Exceeding Policy Limits, 38 Tex.L.Rev. 233 (1960); Note,

41 Tex.L.Rev. 595 (1963); Note, 18 S.W.L.Jour. 157 (1964).

August 2, 1960, Jernigan advised Seguros Tepeyac of Bostrom's suit and called upon it to defend the action. A number of letters passed between Jernigan and Seguros Tepeyac before the suit was tried, the insurer consistently denying liability to a guest passenger and refusing to defend the case. February 12, 1962, the plaintiff recovered a judgment for $270,000 against Jernigan and Sullivan after a trial, without a jury, before Judge Sarah T. Hughes in the Dallas Division of the Northern District of Texas.

Execution on the judgment was returned *nulla bona*. Bostrom then brought this action against Seguros Tepeyac. On submission of special issues, the jury found that the insurer was negligent "in not initiating and attempting to bring about a settlement" of Bostrom's claim "within the $5,000 limit of the public liability policy in question".[2] February 12, 1962, the district court granted judgment for $270,000, and overruled the defendant's motions for judgment and for judgment n. o. v.

June 24, 1964, while this case was on appeal, Jernigan assigned to Bostrom his claim against Seguros Tepeyac. He then filed with this Court a petition asking that he be permitted to intervene. We allowed the petition preliminarily. The intervention asks that the insurer discharge Bostrom's judgment against Jernigan. Bostrom, however, does not rely on the assignment. In the district court he sued in his own right as a third party beneficiary of the insurance contract. On appeal, his attorney now contends that Bostrom, as a judgment creditor, is entitled to reach funds of the insurer to the amount of his judgment.

## II.

In a Stowers situation the "petition asserts, in effect, *two* causes of action, one for the sums *contracted* to be paid and one (*in tort*) for the excess of the

judgment above those sums." Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc., Tex.Civ.App.1948, 215 S.W.2d 904. Here, for example, Bostrom has a $5,000 suit, sounding in contract as a third party beneficiary, and a $265,000 suit, sounding in tort, based on the defendant's negligence. We shall discuss, first, the plaintiff's standing to sue in contract.

■ This Court held in Ohio Casualty Ins. Co. v. Beckwith, 5 Cir. 1934, 74 F.2d 75, that a liability insurance policy is a contract for the benefit of a third person, entitling an injured claimant to sue the insurer to enforce payment of his judgment. Similarly, in Seaton v. Pickens, 1935, 126 Tex. 271, 87 S.W.2d 709, 711, 106 A.L.R. 512, the Texas Supreme Court declared that "[t]he policy * * * inures to the benefit of such injured persons, as well as to the benefit of the assured"; accordingly, "the injured person, after obtaining final judgment against the insured, may sue the insurer to enforce payment of the judgment without causing execution to be issued against the insured." This strong dictum in Seaton v. Pickens is supported by other Texas cases. See Womack v. Allstate Ins. Co., 1956, 156 Tex. 467, 296 S.W.2d 233; Commercial Standard Ins. Co. v. Ebner, 1950, 149 Tex. 28, 228 S.W.2d 507.

■ Here the contract was executed in Mexico; the insurer was a Mexican company; the parties anticipated public liability coverage for accidents taking place in Mexico. In these circumstances, the trial judge properly found that Mexican law controls the meaning of the contract. Article 147 of the Mexican law governing insurance therefore must be read into the policy. This article, consistent with the civil law generally, specifically recognizes that the injured party is a third party beneficiary of the insurance contract.

---

2. In Stowers the negligence consisted of rejecting an offer to settle within the policy limits. In the instant case, the district court relied on the "view that

the duty to settle implies the duty to negotiate." Chancey v. New Amsterdam Cas. Co., Tex.Civ.App.1960, 336 S.W. 2d 763, 764, error ref. n. r. e.

"Art. 147. Liability insurance grants the right to the indemnity directly to the damaged third person, who shall be considered as beneficiary of the insurance from the moment of the loss.

"In case of death of the latter, his right *to the insurance amount* shall be transmitted by way of succession, unless the law or the contract which establish for the assured the obligation to indemnity, specifies the family members of the deceased to whom the indemnity must be paid directly without the need of estate proceedings." (Emphasis supplied.)

In the second paragraph of Article 147, the reference to "the insurance amount" seems to indicate, as well as it should, that the quasi-contract with the claimant is limited to the policy limit.

██ The only significant clause in the one-page policy provides: "The Company agrees that within the terms, exceptions and General Conditions hereof, the indemnities payable to the insured *shall be effected once the damage suffered or caused by the vehicle has been proved and adjusted."* Although this clause describes the payment as "indemnities", the clause states that the insurer must pay as soon as the *"damage caused by the vehicle"* has been proved and adjusted. The amount of damage to third persons is established at the very latest when a judgment is rendered against the insured. Satisfaction of the judgment is not necessary to establish the damages caused by the vehicle to third persons. If the policy had provided that the damage *"to the insured"* must be fixed before payment by the insurer, the policy would have been an indemnity policy. Compare Universal Automobile Ins. Co. v. Culberson, 1935, 126 Tex. 282, 86 S.W.2d 727; Seaton v. Pickens. Instead, the policy provides that the "damage to the third person" must be fixed before the insurer is liable. The clause in the policy in this case is similar to the typical "No Action" clauses of policies construed as liability policies by the Texas courts. Such clauses usually state: "No action shall lie against the Company until the amount of the damages for which the assured is liable by reason of any loss covered by this policy is *determined* either *by* a final *judgment* against the Assured, *or by* agreement between the Assured and the plaintiff with the written consent of the Company."* These clauses do not permit a direct action by a third party claimant against the insurer before judgment is recovered against the insured, but they establish that the policies are liability policies rather than indemnity policies, and permit an action against the insurer, for the amount of the policy or less, as soon as there is judgment against the insured. See Lander v. Jordan, Tex.Civ.App.1933, 59 S.W.2d 959; American Indemnity Co. v. Martin, Tex.Com.App.1935, 126 Tex. 73, 84 S.W.2d 697; Cuellar v. Moore, Tex.Civ.App.1932, 55 S.W.2d 244; cf. Gulf Ins. Co. v. Vala, Tex.Civ.App.1962, 361 S.W.2d 904, 908; Langdeau v. Pittman, Tex.Civ.App.1960, 337 S.W.2d 343. Courts of other states have held that similar policies are liability policies rather than indemnity policies. Rogers v. Youngs, 1931, 256 Mich. 213, 239 N.W. 511; Capelle v. United States Fidelity & Guaranty Co., 1922, 80 N.H. 481, 120 A. 556; Trandum v. Trandum, 1932, 187 Minn. 327, 245 N.W. 380.

██ The difference between the policies involved in those cases and the policy in this case emphasizes that the Seguros Tepeyac policy is a liability policy. The usual liability policy provides that the damage must be fixed "by a judgment". The Tepeyac policy merely says that the damage must be "proved or adjusted". "Adjustment" implies an extrajudicial means of establishing the damage; damage may be "proved" judicially or extrajudicially by informal proof of loss.

We hold therefore that the policy was a liability policy and that under Texas law as well as Mexican law the plaintiff had standing, as the third party beneficiary to the contract, to sue for the amount of the policy.

**174**

### III.

Before discussing the plaintiff's standing to sue in tort for the $265,000 above the policy limit, it is necessary to pause and decide what law applies.

The district judge started with the assumption that the law of Mexico controlled, because the accident occurred in Mexico. He accepted the Mexican statutes on insurance which are silent as to a Stowers situation, but rejected as unreliable the testimony of an "expert" for the insurer that no doctrine paralleling the Stowers doctrine exists in Mexican law. Since there was no credible proof of Mexican law on the claimant's standing to sue or right of action against the insurer for the excess, the district judge "presumed that such law [of Mexico] and that of Texas are the same".

An intriguing, if troublesome, question is created when a conflicts rule calls for the application of foreign law but the content of the law has not been proved to the satisfaction of the trial court. We relegate discussion of the question to a footnote,[3] however, because we prefer to take a different approach

3. The able district judge found authority for his holding in Tortuguero Logging Operation, Limited v. Houston, Tex.Civ. App.1961, 349 S.W.2d 315, err. ref., n. r. e., (applying Texas law relating to pre-judgment interest in the absence of proof of Costa Rica law). As he pointed out, however, there is an exception to the general rule when the *system* of jurisprudence of the foreign country is different from that of the forum. Article 1, Revised Civil Statutes of the State of Texas provides: "The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature". In spite of this strong legislative declaration that Texas is a common law jurisdiction, the district court concluded that since "the civil law originally prevailed in both Texas and Mexico", in this case there should be a presumption that the laws of Mexico and Texas are the same. 225 F.Supp. at 228. See Mexican Cent. Railway Co. v. Marshall, 5 Cir. 1899, 91 F. 933, 938; Mexican Central Railway Co. v. Glover, 5 Cir. 1901, 107 F. 356, 361. Some courts apply their own law by resorting to the presumption of similarity even though the foreign state has a different legal background. See Louknitsky v. Louknitsky, 1954, 123 Cal.App.2d 406, 266 P.2d 910 (applying California community property law in absence of proof of Chinese law); Tidewater Oil Co. v. Waller, 10 Cir. 1962, 302 F.2d 638 (applying "fundamental principles" of Oklahoma tort law but not the Oklahoma Workmen's Compensation Act in absence of proof of Turkish law); Stern Foreign Law in the Courts: Judicial Notice and Proof, 45 Cal.L.Rev. 23 (1957).

On the other hand, there is authority to the contrary in Texas and in this circuit. "Heretofore in all cases for wrongful death or personal injuries occuring in the republic of Mexico, in which the laws of that republic have been alleged and proven, the courts of this state have consistently refused to entertain a suit for the recovery of damages for such death or injury, because the laws of Mexico giving the cause of action and providing for the enforcement are so materially different from the laws of our state relating to torts that the courts of Texas cannot undertake to adjudicate the rights of the parties." El Paso & Juarez Traction Co. v. Carruth, Tex. Comm.App.1923, 255 S.W. 159. See Carter v. Tillery, Tex.Civ.App.1953, 257 S.W.2d 465, err. ref., n. r. e. See also Mexican National Railway Co. v. Jackson, 1896, 89 Tex. 107, 33 S.W. 857, 31 L.R.A. 276; Slater v. Mexican National Railway Co., 1904, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900. In Panama Electric Co. v. Moyers, 5 Cir. 1918, 249 F. 19, this Court rejected the argument that because of a common civil law background the laws of Panama should be presumed to be the same as the laws of the Canal Zone. This case and similar cases rely on the Cuba Railroad Company v. Crosby, 1912, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, in which the Court dismissed the action, stating that the right to recover under foreign law "is part of the plaintiff's case, and if there is reason for doubt, he must allege and prove it."

The older authorities tend toward a jaundiced view of applying the law of the forum. See 3 Beale, Conflicts of Laws § 6211, 622A.2; Restatement, Conflict of Laws § 621 (1934). Modern commentators are more or less in general agreement that the law of the forum should apply when foreign law is not

from that taken by the trial judge. For purposes of determining the insured's tort liability to the claimant for personal injuries, the law of the place where the injury occurred usually governs. Here that was Mexico. But for purposes of determining the insurer's liability to the insured for negligence in a Stowers situation, the place of the accident is irrelevant and certainly is not determinative as to whether foreign law or the law of the forum should control. On the issue of the insurer's liability for breach of its duty to a Texas assured, Texas has a more significant relationship to the determination of liability than Mexico.[4] Bostrom's offer to settle was made to Jernigan in Texas. Suit was filed in the federal court in Texas against a Texas defendant. The insurer's misconduct—failure to initiate and bring about a settlement and failure to defend the suit—took place in Texas.

The insurer qualified to do business in Texas. Texas has an interest in protecting its citizens when there is a breach of the insurer's duty to an insured Texan.

Texas courts usually look to the law of the place where the wrongful act or neglect took place. Mexican National R. R. v. Jackson, 89 Tex. 107, 33 S.W. 857; 12 Tex.Jur.2d, Conflict of Laws, § 13 and cases cited. The original Conflicts Restatement looked to the law of the "place of the wrong", described as "the state where the last event necessary to make an action liable for an alleged tort took place" (§ 377). But Restatement, Second, Conflict of Laws, Tentative Draft No. 9, looks to the "local law of the state which has the most significant relationship with the occurrence and with the parties" (§ 379).[4a]

proved. Nussbaum, The Problem of Proving Foreign Law, 50 Yale L.J. 1018 (1941); Currie, On the Displacement of the Law of the Forum, 58 Cal.L.Rev. 964 (1958); Ehrenzweig, Conflict of Laws 366 (1962); Nussbaum, Proving the Law of Foreign Countries, 3 Am.J. Comp.L. 60 (1954); Stern, Foreign Law in the Courts: Judicial Notice and Proof, 45 Calif.L.Rev. 23 (1957).

In the interest of arriving at a just adjudication, the trial judge should have discretion in determining whether the law of the forum, with or without the disguise of a presumption, should prevail. This discretion should be especially broad in a state with a civil law background. To the extent therefore that the content of Mexican law may be considered applicable but not proved, the trial judge correctly applied the law of the forum. See especially Currie, On the Displacement of the Law of the Forum, 58 Cal. L.Rev. 964, 1027 (1958); Goodrich, Conflict of Laws § 83 at 149 (Scoles Ed. 1964); Ehrenzweiz, Conflict of Laws § 127 at 360, 367; Note, 51 Cal.L.Rev. 635 (1963).

4. Cf. "The orthodox rule, with torts as with crimes, is that when an act operates across a state line its legal character is determined by the law of the place where it first takes harmful effect or produces the result complained of. * * * A contract may have been made in one state

and some personal or property injury suffered or inflicted in the course of performance of the contract in another state. If action on account of the injury be characterized as sounding in tort rather than in contract, the governing law will be that of the place of injury, not that of the place where the contract was made. * * * Actually, the trend away form the orthodox rule, clearly evident in recent cases, is not toward the equally automatic rule of the Tort Claims Act, but toward something far less exact. It may be described as a sort of luxuriance of rules rather than any single rule. It permits a court to make its choice among a considerable variety of contracts at different places as identifying the 'property' controlling law. * * * A reasonably substantial connection with and responsibility for the local activity is what is required." Leflar, Conflict of Laws § 111 (1959).

4a. "§ 379. The General Principle.
(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.
(2) Important contacts that the forum will consider in determining the state of most significant relationship include:
(a) the place where the injury occurred,
(b) the place where the conduct occurred,

 In light of the Texas cases and the state of the law generally, as evidenced by the Restatement, Second, we hold that the law of Texas applies to the determination of the insurer's liability in this Stowers situation. We reach the same result therefore as the district court, without passing on the effect of his ruling that the defendant's expert failed to prove the pertinent Mexican law and without our having to make the violent assumption that in a Stowers situation the law of Mexico is the same as the law of Texas.

## IV.

A. We turn now to the issue of the injured claimant's standing to sue the insurer for the excess over the policy limits. We have reached the same conclusion reached in a recent note on this case: "No Texas case directly supports the court's holding on this point, i. e. allowing an injured party to proceed directly against the insurer on a judgment held against the insured for an amount in excess of policy limits. * * * It is submitted that the Texas courts would not allow such a suit under the Stowers doctrine." Note, 18 Sw.L.Jour. 157, 160, 162 (1964).

 The insurer's duty to settle runs only to the insured. The New Hampshire Supreme Court, on which Stowers relied, states the controlling principle:

"[T]he duty of an insurance company to protect its insured against

liability cannot consistently be extended to include protection to one who is seeking to hold the insured liable.

"In short, conduct to be legally wrongful must contravene some duty which the law attaches to the relation between the parties * * *, and it is clear that no relationship here exists between [the injured third party] and the [insurer] which would permit the maintenance of the present action." Duncan v. Lumbermen's Mutual Casualty Co., 1941, 91 N.H. 349, 23 A.2d 325, 326.

Professor Robert F. Keeton, in an important article on the subject, points out that not only is the claimant a stranger to the relationship between the insurer and the insured, but the claimant profits from the insurer's failure to settle:

"The excess liability of company arises out of the relationship between insured and company. Claimant is a stranger to that relationship. Not only is company without any duty to claimant to accept claimant's reasonable settlement offer, but also, if there is a sizable disparity between the settlement offer and the amount of the judgment obtained in the trial which follows refusal of the offer, claimant is benefited rather than harmed by company's refusal to settle." Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1176 (1954).[5]

---

(c) the domicil, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

5. Keeton continues: "It would therefore be anomalous to permit claimant to recover directly against company in his own right (in the absence of a policy provision, such as the italicized phrase above, clearly having that meaning). Should he be allowed to accomplish the same result indirectly by taking an assignment from

insured? A doctrine or statute permitting claimant to recover the excess from company, either in his own right or as assignee of insured, is only slightly beneficial to insured—the one who is the victim of company's wrong. Insured is protected by the cause of action for reimbursement. This additional remedy would benefit insured only by making possible at claimant's option a transfer from insured to claimant of the cost of enforcing the claim of excess liability—such expenses and attorney's fees as are not included in the measure of recovery. The person benefited by such doctrine is claimant—a person not harmed by company's refusal to settle. A judicial extension (either by tort or by implied con-

In line with this thinking, the Court of Civil Appeals, in Graves v. Southern Underwriters, Tex.Civ.App.1939, 130 S.W.2d 360, 362, in an alternative holding, held:

"In no event could the company's failure to defend ·Graves' suit against Teel create any grounds of complaint on the part of Graves, since he was enabled, probably by such failure, to obtain a $35,000 judgment against Teel on a claim which he himself testified that he offered to settle for less than $5,000." 130 S.W.2d 360, at 362.

In Wessing v. American Indemnity Company of Galveston, D.C.Mo.1955, 127 F.Supp. 775, Justice, then District Judge, Whittaker, had before him for decision a suit for declaratory judgment brought by an injured party against the insurance company to secure a declaration of the liability of the company to pay to the injured party the amount of the unpaid portion of a judgment secured by her against the insured in excess of policy limits. Judge Whittaker held that the complaint for declaratory judgment did not state a "justiciable controversy":

"Here, the excess liability asserted arises out of the relationship between the defendant, the insurer, and its insureds. Mrs. Douglas was a stranger to that relationship. The defendant owed her no duty at all. Hence, I fail to see how it could be liable to her, in tort, for a breach of duty, for it owed her none. Moreover, her complaint shows that had her offer to settle been accepted she, would have gotten $15,000, but, because it was rejected, her cause went to trial and she obtained a $47,500 judgment, $15,000 of which has been paid. Thus, she did not lose, but stands to benefit, by the failure of defendant to accept her offer of settlement."

tract theory) of the liability of company beyond that undertaken by the agreement cannot be justified by a purpose of benefiting a third party who is not harmed by anything company has done or failed to do. Furthermore, if extensions of liability insurance coverage are to be

See also Chittick v. State Farm Mut. Automobile Ins. Co., D.C.Del.1941, 170 F. Supp. 276; Dye, Insurer's Liability for Judgments Exceeding Policy Limits, 38 Tex.L.Rev. 233, 245 (1959).

B. In order to avoid the result reached in the Texas cases, Bostrom's attorney, a distinguished authority on.insurance law, now contends on appeal that this suit by the judgment creditor is in the nature of a creditor's bill or garnishment to reach funds in the hands of the insurer belonging to the judgment debtor or money the insurer is obligated to pay to the judgment debtor. The fatal defect in this argument is that the insured's claim against the insurer is a contingent and unliquidated chose in action as to the excess of the judgment over the policy limit. Texas law will not permit the garnishment of an unliquidated claim or of any chose in action. See Waples-Platter Grocer Co. v. Texas & P. R. R., 1902, 95 Tex. 486, 68 S.W. 265; Universal Auto Ins. Co. of Dallas v. Christensen, 1930, 119 Tex. 100, 25 S.W.2d 601; Taylor v. Gillean, 1859, 23 Tex. 508; 6 Tex.Jur.2d, Attachment, § 13 ff; 26 Tex.Jur.2d, Garnishment, § 2 ff; 24 Tex.Jur.2d, Executions, § 20.

C. The district court found that Bostrom had standing to sue because of his being in privity with the insured entitling the claimant "to bring suit on a tort growing out of the relationship created by a contract." 225 F.Supp. 222, 233. The court relied on House v. Houston Waterworks Co., 1885, 88 Tex. 233, 31 S.W. 179, 28 L.R.A. 532, approved by this Court in McClendon v. T. L. James & Co., 5 Cir. 1956, 231 F.2d 802, 805. We read House as lending no support to the claimant. The Texas Supreme Court "recognized that for such beneficiary to sue in tort, the relationships of the parties to the contract must be such

provided by agreement or legislation for the purpose of benefiting claimants, it is arguable that the increased cost of insurance should be applied toward higher contract limits, rather than toward disregarding limits when a settlement offer is declined." 67 Harv.L.Rev. at 1176.

that a duty is owed to the beneficiary".[6] In that case a resident of Houston sued the Houston Waterworks Co. for damages to his house caused by a fire, alleging a breach of contract between the city and the company; the company failed to furnish water to extinguish the fire. The plaintiff asserted a right to sue as a third party beneficiary of the contract. The court *denied* recovery. The court said, by dictum, if. a defendant "has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another". That is a far cry from this case. Indeed, in House the Supreme Court of Texas described the relations of the parties to the suit in this language: "We think it is clear that there were no contract relations between the plaintiff and the defendants, and consequently no duty which can be the basis of a legal claim." 31 S.W. at 184. We have the same situation here as to the tort claim for the excess; the insurer owed no duty to the injured claimant.

## V.

■ The claimant's reach exceeds his grasp. As Appleman, in his treatise on insurance, very soundly observes:

"In the absence of statutory provisions or required form policies, it is generally held that the injured person stands in the shoes of the insured, *and his rights against the insurer are no greater and no less*

*than those of the insured."* (Emphasis supplied.) 8 Appleman, Insurance Law and Practice, 1962 Revision, § 4811 (citing many cases). If the insured has no cause of action against the insurer, the claimant has no standing to sue the insurer for the excess.

■ As part of the Stowers doctrine, Texas courts have imposed a serious limitation on the insured's right of recovery by treating it as a right to reimbursement. Whether the policy is one of indemnity or liability, Texas courts limit recovery to the amount the insured has paid to the injured party. The basis for this principle is clear in the case of indemnity insurance; the insurer is obligated only to indemnify the insured for his loss. Although less obvious in the case of liability insurance, the principle is essentially the same: recovery in tort depends on a showing of injury; the insured is not injured until he pays some or all of the judgment against him.[7] On principle, we recognize a basic weakness in this rationale, for the judgment is a mortgage on the insured's future.[8] Nevertheless, in all of the Texas cases permitting the insured or the claimant to recover directly from the insurer, the claim was expressly limited to the policy maximum; in many of these cases the injured person had recovered a judgment above the policy maximum but deliberately limited his claim against the insurer to the maximum coverage under the policy.[9]

6. Note, 18 S.W.L.J. 157, 161 (1964).

7. "[T]here can be no action of tort until payment has been made or loss suffered except where the enforcement of payment by the third person is reasonably certain and its amount can be ascertained with approximate definiteness." Restatement, Torts § 871, Comment j. (1939).

8. Keeton comments: "Some courts have taken the view that even though insured has made no payment on the excess judgment and has no assets subject to legal process for collection of the judgment, he has suffered a loss in that he is adjudged liable to pay. The loss is in the increase in his debts by the amount of

the excess judgment. More of the courts have rejected this view. It has been stated that there must be either payment by insured or else proof that his financial status is such that the excess judgment is certain to be collected. Other opinions dealing with this question have stated simply that the cause of action does not arise until some payment is made by insured in excess of policy limits, not saying what rule should be applied if there is proof that the excess judgment is certain to be collected in the future." Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1173–74 (1954).

9. Ferris v. Southern Underwriters, Tex. Civ.App.1937, 109 S.W.2d 233 (judgment

In no Stowers situation has a Texas court permitted the *insured* to recover from the insurer unless the insured has first satisfied the judgment.[10] If the Stowers doctrine is to be extended, Texas courts must do it.[11]

In Universal Automobile Insurance Co. v. Culberson, 1935, 126 Tex. 282, 86 S.W.2d 727; reh. den'd, 87 S.W.2d 475 (Tex.Com.App. opinion adopted 1935), the injured party had recovered an uncollectible excess judgment against the insured. Both parties jointly sued the insurer for the amount of the judgment. The Texas Supreme Court held that neither was entitled to recover. The court first dealt with the claim under the policy for the maximum coverage of the policy. Under the peculiar terms of the policy, the injured party had a direct action against the insurer for an amount up to the policy maximum; the insured could sue the insurer only if the suit were brought for the benefit of the injured party. "These provisions", the court said, "do not give the assured any right to prosecute the suit in his own behalf before paying the judgment or the costs." 126 Tex. at 289, 86 S.W.2d at 730. The court then dealt with the claim above the policy limits under the Stowers doctrine. The court held that the policy provisions did not give the injured party or the insured any claim against the insurer, because the excess judgment against the insured had not been paid: "Nor do they give him any right to sue for damages because of failure of the company to make a settlement of Miss Witt's claim. As to his alleged cause of action in that

against insured for $4,300, claim against insurer for $2,500, the policy maximum); Automobile Underwriters Ins. Co. v. Long, Tex.Comm.App.1933, 63 S.W.2d 356 (judgment against insured for $10,000, claim against insurer for $5,000, the policy maximum); Graves v. Southern Underwriters, Tex.Civ.App.1939, 130 S.W.2d 360 (judgment against insured for $35,000, claim against insurer for $5,000, the policy maximum). See also Commercial Standard Ins. v. Ebner, 1950, 149 Tex. 28, 228 S.W.2d 507 (claim for less than the policy maximum); Traders & General Ins. Co. v. Davis, Tex. Civ.App.1940, 142 S.W.2d 826; Employers Casualty Co. v. Hicks Rubber Co., Tex.Civ.App.1942, 160 S.W.2d 96. Many cases discussed by the parties and the commentators were decided long before Stowers raised the question of the liability of the insurer beyond the maximum coverage of the policy. See e. g., American Indemnity Co. v. Fellbaum, 1924, 114 Tex. 127, 263 S.W. 908, 37 A.L.R. 633. One or two cases do not expressly state that they were brought within the policy limits, but the claims were so low that they were very probably below the policy maximum. See Womack v. Allstate Ins. Co., Texas 1956, 156 Tex. 467, 296 S.W.2d 233, reversing 286 S.W.2d 308; Seaton v. Pickens, 1935, 126 Tex. 271, 87 S.W.2d 709, 106 A.L.R. 512.

10. G. A. Stowers Furniture Co. v. American Indemnity Co., Tex.Comm.App.1929, 15 S.W.2d 544; Linkenhoger v. American Fidelity & Casualty Co., 1953, 152 Tex. 534, 260 S.W.2d 884; Jones v. Highway Ins. Underwriters, Tex.Civ.App. 1952, 253 S.W.2d 1018; Chancey v. New Amsterdam Cas. Co., Tex.Civ.App. 1960, 336 S.W.2d 763; Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc., Tex.Civ.App.1948, 215 S.W.2d 904; see Fidelity & Cas. Co. of N. Y. v. Robb, 5 Cir. 1959, 267 F.2d 473. See also Kronzer, Status of the Stowers Doctrine in Texas, 1 Sou.Tex.L. Jour. 167, 171, 172 (1954) and Dye Insurer's Liability for Judgments Exceeding Policy Limits, 38 Tex.L.Rev. 233, 244, 246 (1959).

11. Smoot v. State Farm Mutual Automobile Ins. Co., 5 Cir. 1962, 299 F.2d 525 applied Georgia law. Smoot is also factually distinguishable. In Smoot the insured had not paid the excess judgment, but he had substantial property, including a house and an automobile, from which at least part of the excess judgment could have been satisfied; here the insured cannot satisfy even a part of the excess judgment. We do not decide whether the Texas courts would insist on a formal payment by an insured who could satisfy at least part of the judgment. Since the insured here has no assets, we do not reach the question decided in Smoot. We hold only that Culberson prevents recovery of the excess over the policy from the insurer if the insured has no assets and is completely unable to satisfy the judgment. Erie directs us to apply Culberson in a Texas case. See Note, 41 Tex.L.Rev. 595 (1963).

regard, *Culberson cannot assert same until he has paid some sum on the judgment in excess of the $5,000 limit in the policy; and then only to the extent of his payment.*" (Emphasis supplied.) 126 Tex. at 289, 86 S.W.2d at 730–731. In order to make the point doubly plain and to eliminate once and for all any question as to its holding with respect to the right of the injured third party to recover the excess, the Court, on rehearing, said:

> "In our opinion, we made it clear that under the terms of the contract, Miss Witt [the injured third party] has no rights thereunder for any amount 'exceeding the amount of the policy,' to wit, $5,000, with interest thereon from the date of the entry of the judgment. It follows therefore that Culberson [insured] cannot sue for her benefit for any sum in excess of this amount." 87 S.W. 2d 475.

Culberson therefore requires this Court to find that neither the insured nor the claimant has standing to sue until the insured has paid some amount on the excess judgment; the insurer is then liable only to the extent of the insured's payments. See Kronzer, The Present Status of the Stowers Doctrine in Texas, 1 Sou.Tex.L.Jour. 167, 171 (1954).

Texas courts have never overruled or limited Culberson. In Linkenhoger v. American Fidelity & Casualty Co., 1953, 152 Tex. 534, 260 S.W.2d 884, the Texas Supreme Court held that the statute of limitation on a Stowers cause of action begins to run from the date of the judgment against the insured, not the date of the insurer's wrongful failure to settle. The court expressly approved Culberson: "The opinion in the case of Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, clearly supports petitioner's contention. Culberson had brought suit against his insurer for the entire judgment against him, including that portion over and above the policy limit. The court held that as to such excess Culberson could maintain no action against the insurer until he had paid some portion thereof." 152 Tex at 536–537, 260 S.W.2d at 885, 886. The ra-

tionale for Culberson, as noted in Linkenhoger, is that the "fundamental purpose underlying all rules of damages, other than punitive damages, is to indemnify the injured party for the pecuniary loss suffered by him * * *." Reaugh v. McCollum Exploration Co., 139 Tex. 485, 163 S.W.2d 620 (1942).

In Culberson the court stated, "We construe this as an indemnity obligation, rather than a liability contract." The policy, however, contained a contractual "direct action clause," giving the injured person the right to sue the insurer directly to recover the amount of his judgment against the insured, up to the policy maximum. The policy reached the same result as a liability policy, since the insurer had to pay even though the judgment against the insured had not been satisfied. As we read Culberson, the court introduced this distinction only with reference to the claim for an *amount not exceeding the policy maximum.* In Culberson the court had to distinguish earlier lines of cases. American Indemnity Co. v. Fellbaum, 1924, 114 Tex. 127, 263 S.W. 908, a pre-Stowers suit for an amount within the policy limits, had held that the insurer was liable up to the policy maximum even though the judgment against the insured had not been satisfied. The court in Culberson distinguished Fellbaum because Fellbaum dealt with a liability policy while the policy in Culberson was an indemnity policy, and because there the insurer had taken full charge of the defense of the insured. The court distinguished Stowers because "it was shown that the company had full charge of the defense of the suit brought by the injured party, and it was further shown that the Stowers Furniture Company *had paid in full* the judgment against it." (Emphasis supplied.) 126 Tex. at 288, 86 S.W.2d at 730.

Culberson did not distinguish Stowers on the ground that one case involved an indemnity policy and the other a liability policy; Culberson stands for the proposition that neither the liability insurer *nor* indemnity insurer is liable above the policy maximum until the in-

sured pays the excess judgment against him. Since the gist of the Stowers cause of action is negligence, as to the excess it should make no difference whether the contract was liability insurance or indemnity insurance. Culberson distinguishes between claims above and below the policy limits, and between liability and indemnity policies; but the distinction between types of policies goes only to claims based on the policies, not Stowers claims sounding in tort.

This interpretation of Culberson is consistent with later Texas cases. See, for example, Seaton v. Pickens, 1935, 126 Tex. 271, 87 S.W.2d 709.[12] As Seaton v. Pickens points out, Culberson permitted an action against the insurer (within the policy limits) even though the insured had not satisfied the judgment against him. This is the distinguishing feature of a liability policy as opposed to an indemnity policy. Linkenhoger v. American Fidelity & Casualty Co. tells us that Culberson "held that as to such excess [the amount above the policy maximum] Culberson could maintain no action against the insurer until he had paid some portion thereof." 152 Tex. at 536–537, 260 S.W.2d at 885–886. Linkenhoger does not limit Culberson to indemnity policies.

Ratner v. Wheeler, Tex.Civ.App.1947, 301 S.W.2d 268 (concurring opinion) also lends support to our conclusion. In that case the insured had not paid the judgment against him. The injured party sued the receiver of the insurer under the Stowers doctrine. The court allowed the claim only up to the policy maximum. The majority opinion relied on a statute dealing with judgments taken against an insolvent during the receivership. The concurring opinion points out that the same result follows even without the statute: since the judgment against the insured had not been paid, the Stowers doctrine did not apply. Neither opinion discusses the difference between liability and indemnity policies, but apparently the policy in Ratner v. Wheeler was a liability policy, for the court allowed the claim against the insurer up to the policy maximum even though the insured had not paid the judgment against him.

Culberson has apparently survived Texas "financial responsibility" legislation. Texas law now provides that the owner's driver's license must be revoked after a serious accident unless the owner furnishes proof of financial responsibility or proof that he was covered by a motor vehicle liability policy which meets the statutory requirements. One of the statutory requirements is that the insurer must be liable as soon as there is a judgment against the insured. An indemnity policy would not meet the express requirement of the statute. See Safety Responsibility Act of 1951, as amended, §§ 5, 21, Tex.Civ.Stat.Ann. art. 6701h; Gillaspie v. Department of Public Safety, 1953, 152 Tex. 459, 259 S.W.2d 177, cert. den'd, 1954, 347 U.S. 933, 74 S.Ct. 625, 98 L.Ed. 1084. No Texas case has suggested that Culberson is in any way weakened by

---

12. See Seaton v. Pickens, 1935, 126 Tex. 271, 87 S.W.2d 709: "It is not expressly stated in the opinion in Universal Automobile Insurance Company v. Culberson, supra, that one who had obtained a final judgment against the assured for injury suffered from the operation of the automobile may, when the insurer fails or refuses to pay the judgment, maintain an action against the insurer to enforce payment of the judgment without first causing execution to be issued against the assured, but that he may so maintain such action follows from the construction of the policy as directly obligating the company to pay the final judgment to the injured person and from the ruling that the assured may maintain an action against the insurer to enforce payment of the judgment, without first paying the same, provided the suit is brought for the use and benefit of the injured person. Under the construction given the policy, the injured person, after obtaining final judgment against the insured, may sue the insurer to enforce payment of the judgment without causing execution to be issued against the assured, or he may cause execution to be issued against the assured and sue the insurer to enforce payment of the judgment in the event the execution is returned unsatisfied." 126 Tex. at 273–274, 87 S.W.2d 710–711.

this legislation. Similar legislation in New York does not affect the New York rule that the insurer is not liable for the excess judgment until the insured has satisfied it. Thus, in Harris v. Standard Accident and Ins. Co., 2 Cir. 1961, 297 F.2d 627, the court said: "The argument that insurance should protect the injured person as well as the insured applies only to the extent that the insured has taken out insurance. The argument that having received premiums the insurance company should not be relieved of liability because of the insured's bankruptcy does not apply to the excess judgment since the insurer has received premiums only for the face amount of the policy, here $10,000." 297 F.2d at 631. The liability insurer who escapes liability for an excess judgment because the insured is insolvent has not received a windfall: "The insurer has received premiums only upon the face amount of the policy, and this much it must pay regardless of the insured's financial condition. * * * To argue that the insurer gets an unjustified windfall merely avoids the crucial question whether the insured has actually been harmed." 297 F.2d at 633.

■■■ We summarize our holding. The Texas Stowers doctrine encompasses the principle that an injured claimant has standing to sue the insurer as a third party beneficiary of the insurance contract, but may sue only up to the amount of the policy limits. The Culberson limitation on the doctrine deprives the insured of standing to sue the insurer for the excess, except as to any amounts paid on the judgment in favor of the injured claimant. The claimant's rights in an action against the insurer can rise no higher than the insured's rights. When,

as in this case, the insured has no standing to sue because of not having paid all or part of the judgment for the excess, the injured claimant has no standing to sue the insurer for the excess over the policy limits. We find it unnecessary to reach other issues in the case.

Accordingly, the Court affirms the judgment below as to the face amount of the policy and reverses the judgment as to the excess amount over the policy limit of $5,000, without prejudice to the rights, if any, of the insured and the injured claimant, or either, to proceed against the insurer on claims and on a showing not inconsistent with this opinion.

BROWN, Circuit Judge (concurring):

I concur in the affirmance, the reversal in part, and also in the remand of the case to the District Court. Moreover, I concur fully in the exhaustive opinion of my Brother Wisdom except as to some matters discussed in Part V and obliquely referred to in other portions. I think orderly administration also makes it wise [13] to emphasize affirmatively that wide latitude exists on remand especially in the possibility of entertaining, perhaps granting, and then framing declaratory relief. The remand is not necessarily confined to an inquiry into the amount, if any, paid by the Assured on the excess with a possibility of a judgment in his or Bostrom's favor for like amount. In doing so, I follow the Court's format and discuss this in terms of the Assured's rights, not the nonexistent ones of the damage claimant.

Accepting The Court's Holding
On Prepayment

For these purposes I accept this Court's literal reading of the Texas Supreme

13. See FTC v. J. Weingarten, Inc., 5 Cir., 1964, 336 F.2d 687; Hill v. FPC, 5 Cir., 1964, 335 F.2d 355, 365 and n. 27; Shenandoah Valley Broadcasting, Inc. v. ASCAP, 1963, 375 U.S. 39, 84 S.Ct. 8, 11 L.Ed.2d 8, opinion modified and rehearing granted in part, 1964, 375 U.S. 994, 84 S.Ct. 627, 11 L.Ed.2d 467, 468 (dissenting opinion); Bartone v. United States, 1963, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11; United States v. May-

ton, 5 Cir., 1964, 335 F.2d 153; Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 335 F.2d 317; Benson v. United States, 5 Cir., 1964, 332 F.2d 288; Whitney v. Wainwright, 5 Cir., 1964, 332 F.2d 787; Anderson v. United States, 5 Cir., 1963, 318 F.2d 815; Juelich v. United States, 5 Cir., 1963, 316 F.2d 726; Younger Bros., Inc. v. United States, S.D.Texas (3-Judge), 1965, 238 F.Supp. 859, 861–862.

Court's literal statements in Linkenhoger[14] approving the prior literal holding in Culberson.[15] I do so, even though for reasons I later discuss, I am confident that the Supreme Court of Texas would make no such literal holding today in response to the problem we face.

As to the Assured's claim for the *excess* of policy limit, Culberson stated that the policy provisions did not "give him [the assured] any right to *sue* for *damages* because of failure of the company [insurer] to make a settlement of [the damage claimant's] claim." The Court then went on: "As to [the assured's] alleged cause of action in that regard, Culberson [the assured] cannot assert same until he has paid some sum on the judgment in excess of the $5,000 limit in the policy; and then only to the extent of his payment." 86 S.W.2d 727, 730. In a straight out Culberson situation if—and the if is a big one—the only relief sought in a Texas Court is a judgment for *damages*—that is a sum of money payable now—the assured must prove the payment of some of the excess in which event judgment may be rendered to the extent of the payment made.

In Linkenhoger the Supreme Court stated Culberson "clearly supports the [assured's] contention." But in Linkenhoger as in Culberson, assured's suit was for money judgment. The issue was a problem of the Texas two-year statute of limitations. The insurer contended that a Stowers cause of action arose at the time of the negligent rejection of a prudent settlement offer. The assured contended that his rights had not been invaded until the damage claimant's judgment for an excess amount had become final. The statute of limitations problem turned on *when* the assured could have commenced a suit to recover damages as such. Although Linkenhoger did, as we

acknowledge, expressly approve Culberson, it answered this question in terms of the *earliest* date on which suit could have been filed. That was fixed as the day on which the damage judgment became final. Indeed, no mention was even made of the date on which the excess judgment was *paid,* obviously a later date. The Court had to say: "The [assured] could not have maintained this present suit until such time as his liability and the extent thereof had been determined by a final judgment in the [damage claimant's] case. Until then his rights had not been invaded by [the insurer's] failure to accept the terms of settlement offered and the tort was not complete." The Court reiterated, "We sustain the [assured's] point and hold that limitation did not begin to run in any event until the judgment in the [damage claimant's] case became final[16] * * *." 260 S.W.2d 884, 887.

But this is a far cry from holding that *no relief* of any kind would be available under Texas law unless the excess was paid in whole or in part. The Court's own language reflects that it was not viewing this in terms of a demonstrable dollar damage. After first quoting § 899, Restatement, Torts (C. 1939), that a "tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff," the Court translated this into tangible terms in a Stowers situation. Recasting it affirmatively, the excerpts quoted above declare: An assured's rights have been invaded by an insurer's failure to accept the terms of settlement and the tort is complete at the time the assured's liability and the extent thereof has been determined by a final judgment in the damage suit case.

To put it in classic tort concepts, the Insurer owed the duty of due care in the settlement of the case. It breached the

14. Linkenhoger v. American Fid. & Cas. Co., 1953, 152 Tex. 534, 260 S.W.2d 884.

15. Universal Automobile Ins. Co. v. Culberson, 1935, 126 Tex. 282, 86 S.W. 2d 727; on rehearing, 87 S.W.2d 475.

16. As to the instant case, see Part I of the Court's opinion, the damage claimant's judgment was rendered February 12, 1962. Absent an appeal, it became final within thirty days. The damage claimant Bostrom filed this vicarious "Stowers" suit on December 26, 1962 (second amended complaint). The assignment from the Assured to Bostrom was apparently made on June 24, 1964, long after the judgment appealed from was rendered, October 16, 1963.

duty resulting in a judgment in excess of policy limits. The judgment has become final and is irretrievable. The existence of a judgment which is final constitutes an injury which would not have occurred had the Insurer exercised due care. It is the final judgment and its awesome legal effect which sets in train the dollar damages which will ensue, and it is the final judgment which has invaded the assured's rights. As in other situations, it matters not that it may be months or years before the full extent or nature of the injuries may be demonstrated or translated into dollars.

Assuming Texas would require the payment of at least one dollar of the excess judgment to commence a Stowers suit to recover money damages, there is no indication at all—indeed, everything points in the opposite direction—that Texas would deny declaratory relief to a hapless assured faced with a quarter of a million dollar judgment described by this Court as "a mortgage on the insured's future."[17] The remedy is available and is given full voice in Texas.[18] And it is an important device in the Federal arsenal.[19] Both Texas and the Federal system encourage the use of declaratory relief where it is reasonably necessary and will be helpful in resolving a pressing, existing controversy.[20]

This brings into play another important principle of Federal procedure. As F.R.Civ.P. 54(c) makes clear, except in the event of a default decree, the "[r]elief to be granted depends not on the prayer, but on what the facts—either found by trier or established as a matter of law—reasonably * * *" require. Burton v. State Farm Mutual Auto. Ins. Co., 5 Cir., 1964, 335 F.2d 317, 324. Consequently, on the remand proceedings, with or without formal amendment to the prayer, the District Court will have the 54(c) obligation of determining whether declaratory relief ought to be granted even though because of Culberson a money judgment perhaps cannot be rendered. I would not intimate whether declaratory relief ought to be granted or what its form or character might or should be. There is wide latitude in its form and content for as in Burton, supra, and a host of other cases [21] we have rec-

17. See text accompanying note 8 of Court's opinion.

18. The Uniform Declaratory Judgments Act was enacted in 1943. Tex.Civ.Stat. Ann. art. 2524, §§ 1–16.
"Section 1. Courts of record * * * shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. * * *
"Section 3. A contract may be construed either before or after there has been a breach thereof.
* * * * *
"Section 8. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper.
* * * * *
"Section 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered."
It is given wide and liberal application. Guilliams v. Koonsman, 1955, 154 Tex. 401, 279 S.W.2d 579; Cobb v. Harrington, 1946, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837; see United Services

Life Ins. Co. v. Delaney, 5 Cir. (en banc), 1964, 328 F.2d 483, 489 (concurring).

19. 28 U.S.C.A. § 2201. "In a case of actual controversy within its jurisdiction * * * any court of the United States * * * may declare the rights and other legal relations of any interested party * * * whether or not further relief is or could be sought. * * *."

20. Of course all must recognize that the granting of declaratory relief is a matter of judicial discretion to be exercised in the public interest carefully weighing all factors including matters of state policy. Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784; Seniors v. Arnold, 5 Cir., 1960, 284 F.2d 106; Byers v. Byers, 5 Cir., 1958, 254 F.2d 205; American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers Mut. Cas. Co., 5 Cir., 1960, 280 F.2d 453.

21. Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525; Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139, 145; Sax v. Sax, 5 Cir., 1961, 294 F.2d 133, 139; Dotschay v. National Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221.

ognized that the Court may, indeed often must, cast it in the form of a conditional order or decree.[22]

### Disagreement With Courts Holding Payment Required

Thus far, in discussing the many avenues open for some character of possible relief on the remand, I have accepted the Court's ruling that Culberson requires some payment on the excess as a condition to suit for damages by the Assured. Obviously, if no such payment is required, then all I've said about the prospect of declaratory relief by an assured (or one in his shoes such as an assignee under a valid assignment), is doubly true. On this, I think Linkenhoger, approving Culberson as support for the theory asserted there by the assured, effectively releases Texas from this straightjacket to permit an Erie-seeking Court to conclude that Texas would now align itself with the rule of reason permitting suit for damages without prior payment. In the light of Linkenhoger, any other conclusion commits Texas to absurd, unrealistic results which are at one and the same time wholly out of keeping with its policy of repose reflected in statutes of limitations and constitutes rank discrimination against these victims of another's wrong. Moreover, the rule simply does not serve any real purpose.

As pointed out, Linkenhoger involved a question of when the statute of limitations commenced to run. The insurer on this hypothesis admitting its wrong, urged that the assured's claim came into being when the wrong was done, i. e., the prudent settlement rejected negligently. The assured contended that it commenced when the damage suit judgment became final. The Supreme Court agreed with the assured. We know for certain that in Texas the suit for damages may not be brought prior to the damage suit judgment becoming final. If giving literal effect to Linkenhoger's literal approval of what Culberson literally said, we add to the Linkenhoger formula the Culberson requirement of payment, it produces this very startling and senseless result. The suit need not, indeed may not, be filed until payment. If there is no payment by the assured on the excess, the thing can rock along for, say, five, ten, fifteen, twenty, or twenty-five years without suit being permitted. But if, at any one of these times, a dollar is paid by or obtained from the assured on execution, the Stowers-Culberson suit can be commenced at that late date. By that time, of course, the witnesses may be dead and gone, or their whereabouts unknown. The lawyers who handled the case for the insurer, the investigative agents and claims adjusters, all of whose contemporary judgments will be under review in establishing breach of due care or defending against that charge, may be scattered or dead, retired or senile. Files may be either destroyed or misplaced, and if located will be of doubtful sufficiency in resurrecting a recollection of the handling of one particular case out of the hundreds or thousands of a busy professional lifetime. The truth will be hard to find, and the hurt will be nonpartisan in its effect, the assured suffering in one case, the insurer in another.

Nor can this prospect be brushed aside as a visionary hypothetical. The instant case is the best proof of its likelihood. A judgment debtor because he is young and the record proof does not affirmatively establish that he has some property is declared to have no standing to sue since he has not yet paid. The reflex of this is startling. For the Assured, the judgment debtor, has the Insurer's fate pretty much in his hands. With all of the whispered suggestions which sometimes emerge in the briefs or arguments of the possibility of connivance and collusion between a damage suit plaintiff and the judgment-debtor-assured, this consequence of Culberson-Linkenhoger certainly lets the gate wide open. Time here may work in much favor for the judgment

---

**22.** The Assured is not, of course, a party. Declaratory relief available to or to be granted to Bostrom, the damage claimant, depends on his establishing a status of a vicarious assured through the purported assignment. The Court intimates no opinion on the validity, timeliness, or legal significance of this or any other assignment.

creditor since interest runs at a high rate. By friendly cooperation [23] with the assured, his former adversary, the judgment creditor has only to keep the judgment alive under local statutes, and then time either execution on it or his self-help collection efforts for a moment when the disadvantages of proof and rebuttal will be greatest to the Insurer.

Moreover, if one accepts—as I cannot—the Court's conclusion that this Assured is destined for a life of poverty, things get worse, not better, under this rule. Someday, perhaps many years later, this young man by modest savings out of the probably average income of any other good American citizen, will acquire a few assets not under the Texas exemption umbrella with which to pay some of the excess judgment. When that day arrives, he may then sue the Insurer, either alone or with his assignee. And applying the Court's reading of Linkenhoger-Culberson, the suit will be timely even though time has made it impossible to defend in fact.[24]

From Linkenhoger we know that the assured's rights have been invaded as a consequence of the insurer's failure prudently to settle when the assured's liability and extent thereof has been determined by final judgment in the damage suit. In the light of this, we can no longer assume that Texas would undertake to declare as law a thing so absolutely in conflict with sheer economic fact—that the existence of a final judgment for a large sum does not damage the judgment debtor. Perhaps I reflect a parochial tendency, but I am confident that the Supreme Court of Texas would not in this day and era forecast for one of its young citizens a life so bleak and economically unrewarding as this legal theory necessarily implies.[25]

The record shows that Jernigan made the trip to Mexico with his young friends Bostrom and Sullivan, all of whom were around the age of 20 at the time of this 1958 occurrence. They were working at Tempco Aircraft Company at Grand Prairie, Texas, an industrial suburb in the Dallas-Fort Worth complex. Jernigan, the Assured, worked as a tooler and former, a class of labor I would suppose to be in the semiskilled, if not skilled, level. Assuming, as is true of a great majority of Texas young people, that he was a high school graduate, the figures are telling and when figures talk, Courts listen. State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, 586, affirmed, 1962, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed. 112. Although at the time of judgment in 1962, he was about 24 years of age with a life expectancy of 46.6 years it facilitates our purposes to round this out for one of 21 years with a high school education. Assuming retirement at 65 and the prospect of 44 work years, the

---

**23.** The assured does owe the duty of good faith cooperation. But once the insurer breaches its obligations to the point where, on this hypothesis, it has negligently failed prudently to settle with a resulting judgment far in excess of policy limits, there seems to be no reason why, at that stage, an assured may not take any honest action which appears to hold out prospect for relieving himself of the specter of all or a substantial part of a large and growing judgment even though this incidentally benefits the former adversary as well.

**24.** This inescapable consequent furnishes powerful supporting reasons for the existence of a right to obtain suitable declaratory relief prior to payment of the excess, but after the damage suit judgment has become final. Unless this relief is open, it may be that vital evidence will be lost altogether with detriment to the assured, the insurer, or both. With no right to sue for damages, the only other way to preserve evidence would be by the awkward and unsure device of a bill of discovery to perpetuate testimony. F.R.Civ.P. 27(a) (1), (c); Tex.R.Civ.P. 737.

**25.** This concept is absorbed by the Court. See note 11 distinguishing Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525, on the ground that Smoot "had substantial property * * * from which at least part of the excess judgment could have been satisfied" while "here the insured cannot satisfy even a part of the excess judgment"; and "since the insured here has no assets * * *," Culberson prevents recovery "if the insured has no assets and is completely unable to satisfy the judgment."

officially recognized population-income statistics demonstrate that $250,000 is a conservative income expectancy for this economic lifetime.[26]

As to this Assured at least, these figures prove it to be a mild understatement for the Court to declare that a $272,000 judgment is a mortgage on a future income of $250,000.

More so, with this longevity and these attainable averages, it is economically improbable and morally indefensible to assume that this productive Texan will either have (a) no savings or, worse, (b) will somehow be clever enough to keep them judgment proof through investments which are statutorily exempt from the reach of creditors. Broad and humane as one would expect the Texas exemption statutes to be, there is still plenty left for the relentless creditor and especially one armed with a judgment that can be kept alive forever.[27] No property is exempt unless, expressly or by very liberal implication, it is so designated by the statute, 25 Tex.Jur.2d Exemptions § 13. Although exemptions extend liberally to furniture, books, pictures, wearing apparel, farm animals, horses, mules, some

vehicles or carriages, tools apparatus and books belonging to a trade or profession, current wages, and a homestead, there are many things in peril. Unprotected are those assets which normally represent a lifetime savings against the cost of education, the hazard of uninsured illness or old age, or accumulated to enjoy in today's leisure time. These include savings deposits, bank accounts, corporate stocks, non-homestead real estate, sporting goods, boats, and the like. And even for property as safe as a family homestead, the proceeds of a sale are not exempt, 25 Tex.Jur.2d Exemptions §§ 20, 21.

Moreover, this huge judgment, ubiquitous and perpetual, with an almost scriptural [28] tenacity from the break of day to the dark of night is with him always. In an economic society geared to the use of credit for both personal and business acquisition, this judgment stands in the way. It is a lien on all property and his opportunity to meet the needs of himself or his family is encumbered or frustrated as prospective vendor-creditors learn that he is already committed beyond the prospective lifetime earning capacity of the average American. Like Sergeant Smoot,[29] who de-

---

26. In 1961, the median income for high school graduates, aged 25 and over, was $5,552. 1962 figures show the median income of employed male civilians to be $5,240, and if he works in manufacturing, $5,793, with median family income at $6,237.

But a breakdown, based on 1961 figures, reveals that 50.9% of high school graduates earned over $5,000.

| | |
|---|---|
| $ 3,000 to $3,999 | 11.9% |
| 4,000 to 4,999 | 12.6 |
| Over 3,000 | 24.5% |
| $ 5,000 to $5,999 | 15.5% |
| 6,000 to 6,999 | 12.5 |
| 7,000 to 9,999 | 16.2 |
| 10,000 and over | 6.7 |
| Over 5,000 | 50.9 |
| Total over $3,000 | 75.4% |

Viewed from another angle, and perhaps more meaningfully, 1962 figures show that of the families in this country with income between $10,000 and $15,000, fully 61% had no more than a high school education, and of the families with over $15,000 income, 41%

had had no more than a high school education. Source, Statistical Abstract, 1963, p. 122, and 1964, pp. 340–43.

One of the nation's distinguished economic analysts, Sylvia Porter in "Your Money's Worth," Houston Post, December 10, 1963, evaluating the benefit of education stated average gross incomes for the years 18 through 64 was as follows:

| Years Completed | | Average Total Lifetime Income |
|---|---|---|
| Grade School | 8 | $184,000 |
| High School | 1 to 3 | 212,000 |
| | 4—grad. | 247,000 |
| College | 1 to 3 | 293,000 |
| | 4—grad. | 417,000 |

27. See Tex.Civ.Stat.Ann. art. 5447–5449; 35 Tex.Jur.2d Judgments §§ 590, 595.

28. Psalm 139; see Continental Oil Co. v. FPC, 5 Cir., 1959, 266 F.2d 208, 222 (dissenting).

29. Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525, and 1964, 337 F.2d 223.

pended on his Air Force pay and the credit that modest income would generate, this Assured's plans for the development of his life, the welfare, health, education of himself and his children and the opportunity through diligence and savings to acquire things that make life a more pleasant experience are all things which are in the hands of this judgment creditor. Unless—even in this enlightened day—we still demand leg irons and chains, this is peonage in fact. It is the interests of the Assured, not the damage claimant-judgment creditor, that are at stake here. One can agree, as this Court does in echoing the Second Circuit, that there is no basis for the notion that an insurer gets an unjustified windfall because the damage claimant does not reap the excess judgment over the policy limits. Harris v. Standard Acc. & Ins. Co., 2 Cir., 1961, 297 F.2d 627, 631–633.[30] But the plight of the assured cannot be so easily brushed away. It is ironic that the insurer, because of the peculiar nature of the tort inflicted, wreaks such damage that it may be impossible for the injured assured ever to recover a single cent. Now that Linkenhoger is here, Texas will follow Georgia,[31] Florida,[32] and many others in affording a right to sue when

the harm has become irretrievable—when the damage suit judgment becomes final.[33]

Finally, the Culberson requirement of payment of some of the excess serves no purpose. Nevertheless, it cuts up litigation into never ending pieces so that if the parties live long enough and enough Judges are around and courthouses are open, the judgment, no matter how big, will someday be paid.

We recognize, as we must, that Culberson does not require payment of all of the excess judgment. It declares only that the assured "cannot assert" the Stowers claim "until he has paid some sum on the judgment in excess of the [policy limits] ; and then only to the extent of his payment." 86 S.W.2d 727, 731.

An analysis of this requirement reveals that the payment of even a nominal sum sets the whole thing in motion, the effect of which is to obtain a judicial determination which is binding as res judicata on liability, and that victory is the first such claim assures a source out of which the whole claim will finally be paid. A dollar is as good as a hundred, but to keep it out of petty courts, I use the figure of 100 dollars.

30. Although the point involved in Harris was not yet reached, this Court in Palmer v. Travelers Ins. Co., 5 Cir., 1963, 319 F.2d 296, held that the Referee's refusal to permit a bankruptcy Trustee to sue the bankrupt's insurer for a Stowers claim was erroneous. There the statute of limitations was again the key according to the insurer's viewpoint. It argued that since the damage suit judgment was not final until long after the date of bankruptcy, the assured (bankrupt) had no right against the insurer as of the date of bankruptcy and the trustee therefore succeeded to none. We rejected that artificial restraint on a trustee's powers. Concurring generally, I added a further concurrence that the insurer's theory confused the right to recover money damages on a Stowers claim with other legal remedies open to an assured, long before the judgment became final, to compel an insurer to comply with its contractual duty. Of these I said: "These were valuable existing rights which belong to the Assured and to which the Trustee

succeeded. Any other result would be to allow an insurer to default, drive its assured to the wall of bankruptcy, and then blithely advise the estate, the trustee, the assured and all of the creditors that while its duty was breached, there is nothing to be done about it." 319 F.2d 296, 300.

The 7th Circuit recently allowed recovery of excess damages by the trustee without prior payment of the damage judgment which judgment drove him to the wall of bankruptcy. Anderson v. St. Paul Mercury Indem. Co., 7 Cir., 1965, 340 F.2d 406.

31. Smoot v. State Farm Mut. Auto. Ins. Co., supra, note 29.

32. Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 335 F.2d 317, 324.

33. Another peril to the contrary rule is the possibility that the insurer will go out of business, become insolvent, etc. during the long wait between judgment finality and the first payment.

The assured, the judgment debtor, pays $100 on the judgment. He then files his Stowers suit to obtain a Culberson recovery of that amount. That draws necessarily in issue the question of the negligence of the insurer in failing to settle. On our hypothesis the assured prevails. He obtains a judgment for $100 which becomes final. On execution of that judgment, the assured gets the $100. This is property subject to no exemption. By attachment or garnishment or execution, the damage claimant judgment creditor gets this $100. In this way the assured has paid another $100. He institutes his second Culberson-Stowers suit to recover that $100. Now his task is simple. He need prove only the prior judgment which establishes liability on res judicata and the fact of payment through execution on the Stowers damages momentarily received by him from the insurer. Another judgment for $100 is rendered. It becomes final. There is execution on it. And so on ad infinitum.[34]

I do not minimize what Culberson said it held. I do assert that Linkenhoger added so much to the Texas Stowers law that Culberson may no longer literally be applied. Having gone as far as they have in Linkenhoger, the Supreme Court of Texas will recognize that the factors discussed by me produce artificial, absurd and very damaging consequences. It will, I am confident, recognize the right of an assured thus victimized to have a judicial determination of his grievance at a time when the facts are reasonably available to all parties. It will grant appropriate relief without condemning the assured to the ignominy of bankruptcy, the stealthy acquisition and concealment of non-exempt savings and assets or the certain knowledge that as he progresses in age and income, his fortune is dedicated to a judgment holder all because an insurer breached a duty to defend him prudently.[35] In this way Texas will give full voice to the Stowers doctrine.[36] A niggardliness in this area would be out of step with its liberal policies on tort liabilities generally, including the ordinary case for damages caused by negligent breach of contract. See 40 Tex.Jur.2d Negligence § 9. Some criticize the due care standard in contrast to that of good faith, but all States seem to recognize now that an assured does have some recourse for failure of the insurer to perform his engagement. Like the stevedore, the insurer must perform its engagement in a workmanlike manner or it suffers the consequences, sometimes awesome indeed. See Vickery, Stevedore-Shipowner Indemnity: The Ryan Doctrine, Tul.U. 7th Tidelands Inst. 167–76 (1963); Strachan Shipping Co. v. Melvin, 5 Cir., 1964, 327 F.2d 83, 86 (dissenting).

34. The ad infinitum may be really so. For under Culberson, the suit may be filed "only to the extent of [the assured's] payment." Necessarily the statute of limitations runs only as to the payment made. This recognizes, therefore, that the claim is divisible, is not encumbered by doctrines against splitting of a cause of action, and some cause of action remains until the judgment final discharged by final payment.

35. Negligence of the Insurer is assumed in the hypothesis of the Court's opinion and this concurrence. Although the Assured is not a party, the case was tried, submitted and decided for all practical purposes as though he were or had been a party. Of course, I intimate no opinion as to whether the Insurer is bound by this.

36. I am at a loss to understand where the Court finds any basis for its feelings that Texas is afraid of the Stowers doctrine, wishes it had never been started, or ways must be found to constrict it. And since this is not an *extension* of Stowers, I disagree with such comments as "If the Stowers doctrine is to be extended, the Texas courts must do it", 347 F.2d 179.